## 39405. C C FINANCIAL, INC. v. ROSS et al.

WELTNER, Justice.

C C Financial, Inc. brought this action against Ross, individually, and doing business as R & H Carpet Sales (R & H), to recover deficiencies arising out of an accounts receivable factoring agreement. Ross defended on the ground that C C Financial had failed to carry out its obligations as a factor. The case was tried before a jury, which returned a verdict for Ross, and the Court of Appeals affirmed. *American Spacers v. Ross,* 164 Ga. App. 341 (296 SE2d 176) (1982). We granted the petition of C C Financial for a writ of certiorari, to consider whether C C Financial is a factor within the meaning of OCGA § 44-12-75 (Code Ann. § 12-401); whether the dispute between these parties is governed by their factoring agreement; and the impact of Uniform Commercial Code upon this dispute.

The parties executed a factoring agreement under which C C Financial agreed to purchase accounts receivable from R & H in exchange for a percentage of billings plus interest on amounts advanced. C C Financial agreed to pay R & H 75% of the face value of purchased accounts, reserving 25% for "chargeback" purposes. The factor took a standard U.C.C. financing statement from Ross, giving to it a security interest in all accounts receivable together with merchandise returns and other goods represented thereby. The agreement provided that C C Financial would have the rights of a secured party under the Uniform Commercial Code.

The agreement required Ross to do all billing, and that his invoices should state that amounts due were payable to C C Financial. Ross warranted that there would be no setoff, counterclaim or defense to the right to payments of amounts due on factored accounts. It was agreed that if any customer failed or refused to pay the full amount of any invoice or account, or requested an

adjustment, for any reason other than the financial inability of the customer to pay, Ross was required to notify C C Financial immediately and adjust any such claim or dispute at his own expense within 30 days. C C Financial's only obligation with respect to collection was to share information regarding disputed accounts. The agreement further provided: "Notwithstanding the foregoing policy and any extension or leniency which we may grant, at any time we deem it necessary for our protection you shall on our demand repurchase a disputed invoice or account from us, and we may at any time set off the claimed or disputed amount or any part thereof against any amount due you, or we may charge such amount against your reserve or any other collateral of yours which we hold. You will hold us harmless from any liability for or expense on account of any deduction or claim of any of your customers arising from a merchandise dispute or claim. Any adjustment or credit to an account by you shall be immediately communicated to us, and you shall forward to us immediately an amount equal to the difference between the amount of the account before adjustment and its adjusted outstanding balance. . . ."

1. The Court of Appeals concluded that C C Financial, as a factor, was bound to exercise the standard of care enunciated in OCGA § 44-12-75 (Code Ann. § 12-401).[1] Both sides contend, and we agree, that § 44-12-75 (Code Ann. § 12-401) was originally intended to apply to a factor as bailee of merchantable goods, a practice rarely followed in modern day commerce, and that it would be inappropriate to apply that Code section to an accounts receivable factor such as C C Financial. Rather, the relationship between Ross and C C Financial must be governed by their contractual agreements and, to the extent applicable, the provisions of Title 9 of the U.C.C.

2. Ross contends that in holding, collecting, releasing and charging back accounts, C C Financial was bound to exercise commercial reasonableness, based upon the provisions of OCGA § 11-9-502 (2) (Code Ann. § 109A-9—502): "A secured party who by agreement is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor and who undertakes to collect from the account debtors or obligors must proceed in a commercially reasonable manner and may deduct his reasonable expenses of realization from the collections. If the security

---

[1] "Since peculiar confidence is reposed in a factor, he may, in the absence of instructions, exercise his discretion according to the general usages of the trade. In return, greater and more skillful diligence and the most active good faith are required of him." OCGA § 44-12-75 (Code Ann. § 12-401).

agreement secures an indebtedness, the secured party must account to the debtor for any surplus, and unless otherwise agreed, the debtor is liable for any deficiency. But, if the underlying transaction was a sale of accounts or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides." The first sentence of this provision, by its own terms, applies only to a secured party (in this case, an accounts receivable factor) "who undertakes to collect from account debtors or obligors." The apparent reason for the requirement of commercial reasonableness is to assure, where the secured assignee of receivables undertakes to collect on accounts, that the assignee act with the same degree of prudence which the original account creditor would exercise. See Official Code Comment (2) to U.C.C. § 9-502.

In this case C C Financial in no way undertook to collect factored accounts. Rather, by the express terms of the factoring agreement, the duty of collection was placed exclusively upon Ross. As this is an agreement between merchants dealing at arms' length, with consideration flowing to both sides, we see no obstacle to leaving the duty of collection with the debtor, nor is it now contended otherwise. Therefore, we conclude that Ross may not rely on the standard of commercial reasonableness embodied in § 11-9-502 (2) (Code Ann. § 109A-9—502), but must look to the terms of the factoring agreement.

3. As we have considered only the applicability of OCGA §§ 44-12-75 (Code Ann. § 12-401) and 11-9-502 (2) (Code Ann. § 109A-9—502) to this dispute, the case is remanded to the Court of Appeals for proceedings consistent herewith.

For the purpose of compliance by our appellate courts with the Constitution of Georgia of 1976, Art. 6, Sec. 2, Par. 5 (Code Ann. § 2-3105) (the two term rule), cases transferred or remanded by this Court to the Court of Appeals will be considered as entered on the court's docket for hearing on the day the remittitur from this Court is received in the Court of Appeals.

*Reversed and remanded. All the Justices concur.*

DECIDED APRIL 5, 1983 —
REHEARING DENIED APRIL 25, 1983.

*Don W. Johnson, Robert A. Whitlow,* for appellant.
*Warren N. Coppedge, Jr.,* for appellees.
*Jerry B. Blackstock, Daniel H. Neely,* amicus curiae.