## 73612. B & W PIPELINE, INC. v. NEWTON COUNTY BANK.
(353 SE2d 829)

DEEN, Presiding Judge.

The appellee, Newton County Bank (Bank), commenced this action against B & W Pipeline, Inc. (B & W), to collect on a promissory note executed on February 8, 1985, by B & W. The trial court granted summary judgment for the Bank both on its claim and

B & W's counterclaim alleging fraud, and B & W brings this appeal. Both parties agree that the facts as delineated by the trial court, and quoted below, are essentially undisputed.

"Prior to the execution of the promissory note in question, the Bank's president, one Don Hairston, assisted one John Jolley in obtaining a land development loan from the Bank. The loan was to fund a residential subdivision development in Rockdale County known as Old Salem Subdivision. Jolley, a maintenance man at an Atlanta hotel, lent his name to the project, but it appears that Hairston was, in reality, the real developer of the property. With the proceeds of the loan, Jolley purchased a forty-acre tract of land from Atlanta Suburbia Estates giving the Bank a security deed therefor and executing a second security deed, subordinate to the Bank's, to Atlanta Suburbia.

"Hairston later approached B & W's president, one David Williams, and requested that B & W install the water and sewer lines for Old Salem Subdivision. Williams never actually met Jolley, the purported developer of the project, and dealt entirely with Hairston as President of the Bank. Williams submitted B & W's contract proposal to Hairston who authorized Williams to commence construction. Williams never received a signed contract from Jolley, although Hairston represented that the contract had been accepted by Jolley.

"Upon completion of the work, Williams approached Hairston at the Bank to receive payment of the contract price. Hairston informed Williams that the Bank was not at that time holding any of Jolley's funds, whereupon, Williams left and returned a month later. Again, Hairston told Williams that the Bank did not have any of Jolley's funds to disburse. Because B & W needed the money to pay its materialmen, Williams agreed to Hairston's suggestion that B & W borrow the needed funds from the Bank. The note, which was executed on February 8, 1985, provided for a maturity date of June 1, 1985 and assigned B & W's accounts receivable from Jolley to the Bank as collateral for the loan. Hairston purportedly assured Williams that Jolley would pay the principal and interest on the note, and in fact, some six thousand dollars from Jolley's funds were paid on the note. The note, however, did not by its terms make B & W's repayment obligation contingent on the collection of funds from Jolley. Williams had on at least one prior occasion, however, done business with the Bank in a similar fashion, and the note, on that occasion, was in fact paid off by the developer as per Hairston's representations.

"Subsequent to the execution of the note, Hairston was removed as the president of the Bank due to alleged banking irregularities. In fact, Hairston is the focus of several audits and investigations by the FBI and Federal and State banking officials for his alleged illegal activities. The Bank now seeks to collect from B & W the principal, interest, and attorney fees due under the above-described note, the

same having not been paid on or before its maturity date.

"Finally, despite the fact that Atlanta Suburbia paid off the Bank's first security deed from Jolley on the subdivision property, which deed contained a dragnet clause which arguably included B & W's accounts receivable from Jolley pledged as collateral in the note, the Bank did not collect enough money from Atlanta Suburbia to pay off the Jolley debt, and consequently the note remains unpaid." *Held*:

1. B & W contends that the trial court erred in finding no factual issue existed with regard to B & W's defense that the Bank had not acted in a commercially reasonable manner when it failed to "tack" on B & W's accounts receivable from Jolley to the original indebtedness secured by the subdivision property and paid off by Atlanta Suburbia, a right which the Bank arguably possessed pursuant to a dragnet clause in the deed to secure debt held by the Bank on that property. We disagree.

Certainly, the Bank's failure to invoke the security deed's dragnet clause when Atlanta Suburbia satisfied the indebtedness secured by the subdivision property was not commercially unreasonable under the security deed itself, because the Uniform Commercial Code, along with its standard of commercial reasonableness, does not apply to transactions involving realty. OCGA § 11-9-102 (1); see also *Park Ave. Bank v. Bassford*, 232 Ga. 216, 219 (205 SE2d 861) (1974) (Gunter, J., concurring specially). Also, Jolley's (or Hairston's) actual payment of $6,000 on B & W's indebtedness pursuant to Hairston's scheme provides no basis for finding that the Bank undertook to collect from Jolley as B & W's debtor; the Bank did nothing to relieve B & W of its duty to collect the debt from Jolley, and did nothing to impair B & W's position to do so, had it been possible to collect anything from Jolley. See *CC Fin. v. Ross*, 250 Ga. 832 (2) (301 SE2d 262) (1983); *ITT Terryphone Corp. v. Modems Plus*, 171 Ga. App. 710 (320 SE2d 784) (1984). Under the circumstances of this case, B & W's contention that the Bank acted commercially unreasonable, in failing to collect B & W's accounts receivable by ballooning the original indebtedness secured by the deed to secure debt granted by Jolley and paid off by Atlanta Suburbia, is tantamount to arguing that it was commercially unreasonable for the Bank not to exploit Atlanta Suburbia. That argument itself exceeds reason.

2. B & W also contends that the trial court erred in granting summary judgment for the Bank on B & W's counterclaim for fraud in the inducement in entering the contract with Jolley to install the pipeline. B & W's asserted bases for this counterclaim were Hairston's misrepresentation to B & W about Jolley's status as the residential developer and OCGA § 10-6-60, under which a principal is bound for the fraud of his agent in the transaction of the principal's

business. As correctly concluded by the trial court, however, it is patent that no actionable fraud was demonstrated, because as a matter of law B & W's blind reliance upon any representation about Jolley, without any attempt whatsoever at direct contact with Jolley, was unjustified. *Charter Medical Mgt. Co. v. Ware Manor*, 159 Ga. App. 378 (283 SE2d 330) (1981).

*Judgment affirmed. Birdsong, C. J., and Pope, J., concur.*

DECIDED JANUARY 26, 1987 —
REHEARING DENIED FEBRUARY 6, 1987.

*Sidney L. Nation*, for appellant.
*Harrill L. Dawkins, Salvatore J. Serio*, for appellee.