UNITED STATES of America, Plaintiff–Appellee,

v.

Donald A. HAIRSTON, Sr., Defendant–Appellant.

No. 88–8478.

United States Court of Appeals, Eleventh Circuit.

Nov. 24, 1989.

Alan J. Baverman, Gary G. Grindler, Chilivis & Grindler, Atlanta, Ga., for defendant-appellant.

Gerrilyn G. Brill, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before VANCE and ANDERSON, Circuit Judges, and ATKINS *, District Judge.

ANDERSON, Circuit Judge:

Donald A. Hairston, Sr. was indicted for misapplication of bank funds (Counts 1–4 and 6–13) in violation of 18 U.S.C. § 656, and for making a false statement to a bank with respect to a loan (Count 5) in violation of 18 U.S.C. § 1014. After trial, the jury returned a verdict of guilty on all counts. Hairston brings this appeal challenging his conviction and contesting the district court's order that he pay restitution as part of his sentence. We affirm the conviction [1] and the order of restitution.

## I. BACKGROUND

In March 1984 the defendant, Donald A. Hairston, Sr., who was then president of the federally insured Newton County Bank ("the Bank") assisted John Jolly in obtaining a land development loan from the Bank in the amount of $120,000. The purpose of the loan was to fund a residential subdivision development known as Old Salem Estates. Although the property was purchased in the name of John Jolly, Donald Hairston was, in reality, the developer of the project. Jolly was a "straw man," whose name was lent to the project because Hairston had loans at the Bank in an amount close to the maximum the bank could lend to any one customer. Contrary to proper procedure, Hairston presented and voted to approve the $120,000 Jolly loan without first disclosing to the board of directors his financial interest in the loan.

With the proceeds of the loan, Hairston, in Jolly's name, purchased a forty acre tract of land from Atlanta Suburbia Estates. Jolly gave the Bank a security deed on the property, and he executed a second security deed, subordinate to the Bank's, to Atlanta Suburbia Estates. The $120,000 note and deed to secure debt from John Jolly to the Bank provided that each time a lot was sold, $5,000 of the proceeds was to be used to reduce the amount of the loan. The lot release amount was later raised to $8,000. Six of the lots in the subdivision were sold, and pursuant to the lot release provision, five checks for $5,000 each and one check for $8,000 drawn on the accounts of the closing attorneys were issued to the Bank to be applied against the loan. However, rather than reducing the amount of the loan, Hairston applied these checks to the amounts available to be drawn on the John Jolly loan, and ultimately these funds were deposited into the John Jolly checking account, which Hairston controlled. The John Jolly loan was never reduced. This alleged misapplication formed the basis of Counts 8 through 13 of the indictment.

Counts 2, 3, 4 and 7 alleged misapplications concerning loans that Hairston extended to two contractors he hired, David Williams and Robert Upton,[2] to perform sewer and waterline installation at the subdivision and to pave the street there. When the work was completed, they separately approached Hairston for payment. They were told either that Jolly did not yet have the money to pay them or that Hairston had not had the opportunity to speak with John Jolly about the bills. Each con-

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Hairston challenges his conviction on Counts 8–13 of the indictment. Hairston argues that Counts 8–13 were duplicitous, that the evidence was insufficient to support a verdict of guilt, that there was a fatal variance and amendment to the indictment, and that the court's jury instruction concerning the time of the offense was erroneous. These arguments are without merit and warrant no discussion by this court. Therefore, in the text we discuss only Hairston's restitution claim.

2. David Williams is the sole owner of B & W Pipeline Co., and Robert Upton owns a paving firm named Little & Upton.

tractor later approached Hairston again and explained that he needed the money to pay for supplies and labor. Hairston told them that the money still was not available, but if they needed to be paid, he would loan them the money from the Bank and Jolly would pay back the loans through sales of subdivision lots.

Williams and Upton agreed and signed promissory notes. Williams signed one or more notes totaling $33,000. Upton signed an initial note for $10,000, and a subsequent note for $7,000. Neither Williams nor Upton ever filled out loan applications or provided the Bank with financial information, and neither loan was disclosed to the Bank's board of directors as an insider loan. When the Williams and Upton loans went into default, the Bank demanded payment from the two contractors.[3] Williams paid the Bank $10,000 in settlement of the loan, and the Bank wrote off the balance of $19,686. With respect to the Upton loan, Upton paid $7,000 to the Bank ($3,000 of which came from Hairston), and the Bank wrote off $9,064.

**3.** The Bank sued B & W Pipeline, Inc. in state court for payment on its promissory note, and B & W Pipeline counterclaimed on grounds of fraud. The trial court granted summary judgment for the Bank and held that B & W Pipeline had not demonstrated actionable fraud. The Georgia Court of Appeals affirmed, *B & W Pipeline, Inc., v. Newton County Bank*, 181 Ga.App. 684, 353 S.E.2d 829 (1987).

The Bank also sued Little & Upton, Inc. for payment on its note, and Upton filed a third party complaint against Hairston. Before the trial court ruled on the Bank's motion for summary judgment, the parties negotiated an agreement whereby Upton would pay $4,000 in exchange for a voluntary dismissal by the Bank, provided that Hairston would contribute $3,000. The court dismissed all claims with prejudice. *Newton County Bank v. Little & Upton v. Hairston*, Civil Action File No. CV–17,174 (Rockdale County, Georgia, Super.Ct.).

**4.** 18 U.S.C. §§ 3579 and 3580 have been renumbered respectively as 18 U.S.C. §§ 3663 and 3664 effective Nov. 1, 1987, pursuant to the Sentencing Reform Act of 1984, Pub. L. No. 98–473, § 212(a)(1), 98 Stat. 1987 (1984). Because Hairston's offense occurred prior to Nov. 1, 1987, we use the old numbering.

**5.** The Victim and Witness Protection Act is contained in 18 U.S.C. §§ 3579 and 3580 (1982). 18 U.S.C. § 3579 states in relevant part:

(a)(1) The court, when sentencing a defendant convicted of an offense under this title

At Hairston's sentencing hearing, the government recommended that Hairston be ordered, under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. §§ 3579, 3580,[4] to make restitution to the Bank, David Williams, and Robert Upton for their losses. The district court ordered Hairston to make restitution in the amount of $67,750 within one year of his release from confinement. The order included payment of $25,000 to the Bank for its loss on the Jolly loan; $10,000 to David Williams and $19,686 to the Bank for its loss on the loan made to Williams; and $4,000 to Robert Upton and $9,000 to the Bank for its loss on the Upton loan. Hairston timely appealed from the judgment, challenging the validity and fairness of the order of restitution.

## II.  THE RESTITUTION ISSUES

Hairston argues that the trial court's restitution order was improper under the VWPA[5] for the following reasons: (1) the

..., may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense.

(2) If the court does not order restitution, or orders only partial restitution, under this section, the court shall state on the record the reasons therefor.

(b) The order may require that such defendant—

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property ... is impossible, impractical, or inadequate, pay an amount equal to the greater of—

(i) the value of the property on the date of the damage, loss, or destruction, or

(ii) the value of the property on the date of sentencing, less the value (as of the date the property is returned) of any part of the property that is returned....

18 U.S.C. § 3580 provides in relevant part:

(a) The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

. . . .

court failed to make specific findings of fact as to the amount and cause of the Bank's loss before ordering restitution; (2) the government failed to prove by a preponderance of the evidence the amount of the Bank's loss or that the loss was caused by the defendant's actions; (3) Williams and Upton were not "victims" within the meaning of the VWPA and therefore were not entitled to restitution; and (4) the settlement of the state court civil proceeding against Hairston precluded an order of restitution. We will address each of these issues in turn.

### A. *Necessity of Making Findings of Fact*

Hairston contends that because the district court failed to make specific findings of fact identifying the bases for its restitution order, the order must be reversed. We disagree.

Section 3580(a) of the VWPA requires the district court to consider certain factors in determining whether to order restitution, including the amount of loss sustained by any victim, the financial resources of the defendant, the financial needs and earning ability of the defendant, and other appropriate factors. 18 U.S.C. § 3580(a). If the parties dispute the proper amount or type of restitution, the court must resolve the dispute by a preponderance of the evidence. *Id.* at § 3580(d). The VWPA does not explicitly require the court to assign reasons for its determination unless the court does not order restitution or orders only partial restitution. *Id.* at § 3579(a)(2).

The circuits disagree as to whether district courts should be required to make specific findings of fact with respect to the § 3580(a) factors in those cases in which full restitution is ordered. Some circuits, in order to facilitate meaningful appellate review, have invoked their supervisory powers to require such fact finding. *See United States v. Bruchey,* 810 F.2d 456, 458 (4th Cir.1987); *United States v. Hill,* 798 F.2d 402, 406–07 (10th Cir.1986); *Unit-*

*ed States v. Palma,* 760 F.2d 475, 480 (3d Cir.1985). The Ninth Circuit, on the other hand, interprets the VWPA to itself require the trial court to make findings of fact whenever the defendant disputes the amount or type of restitution ordered. *United States v. Cannizzaro,* 871 F.2d 809, 810 n. 2 (9th Cir.1989) (interpreting 18 U.S.C. § 3664(d)).

Other circuits, however, have held that the statute itself does not require trial courts to make specific findings of fact before ordering restitution and have declined to use their supervisory powers to order courts to make such findings. *See United States v. Purther,* 823 F.2d 965, 969–70 (6th Cir.1987) (holding that under § 3664(d), when the defendant offers no evidence with respect to factors he claims are disputed, the court is not required to delay its decision by making findings of fact); *United States v. Atkinson,* 788 F.2d 900, 903 (2d Cir.1986) (holding that the VWPA does not require fact finding). The Fifth Circuit has adopted still another course by holding that although the VWPA does not require a trial court to make findings of fact, the court should do so if the record otherwise does not provide an adequate basis for appellate review. *United States v. Patterson,* 837 F.2d 182, 183–84 (5th Cir.1988).

■ We agree with the courts that have declined to adopt a rigid rule requiring district courts to make findings of fact whenever they impose an order of restitution under the VWPA. The plain language of §§ 3579(a) and 3580(d) required only that the district court "consider" the listed factors and resolve disputes by a preponderance of the evidence. There was no requirement that specific findings be made on each factor. Moreover, we agree with the Second Circuit that such fact finding might unnecessarily encumber sentencing proceedings. *See Atkinson,* 788 F.2d at 902. Realizing, however, that this court must be able to perform a proper review of

---

(d) Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of

the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and

the district court's determination, we adopt the "middle course" taken by the Fifth Circuit in *Patterson:*

> The decision to assign reasons is committed to the sound discretion of the district court, guided by this singular inquiry—absent an assignment of its reasons, does the record contain sufficient data for the appellate court to perform its mandated review? If the record provides an adequate basis for that review, the court need not assign specific reasons for its decision to order full restitution. If the record is insufficient, reasons must be assigned.

*Patterson,* 837 F.2d at 183–84. We believe this standard provides the appropriate amount of flexibility to district courts while at the same time protecting the defendant's right not to be sentenced on the basis of invalid premises or inaccurate information. *See United States v. Satterfield,* 743 F.2d 827, 840 (11th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985).[6]

In the instant case, the record provides an adequate basis upon which to review the district court's restitution order. The proof at trial established that the defendant fraudulently misapplied funds in the amounts of $120,000, $33,000, and $17,000.[7] At the sentencing hearing the district court specifically stated to the attorney for the government, "The question would be, do I have sufficient evidence to determine what the amounts [of the victims' losses] are?" At that point, the government attorney directed the court's attention to a letter written by Harrill Dawkins, attorney for the Bank, which the government had introduced into the record as evidence of the amount of loss suffered by the Bank. The letter sets out the amount of actual loss

suffered by the Bank as a result of its settlement with Atlanta Suburbia Estates: $25,000. The letter also explains how the Bank's loss resulted from Hairston's fraudulent actions. In its restitution order, the court adopted the amount presented in the Dawkins letter, $25,000, as the amount that should be restored to the Bank.[8]

■ The fact that the Dawkins letter is hearsay evidence does not bar the trial judge from considering it in forming the order of restitution. Hearsay evidence may be considered in determining a defendant's sentence, so long as the defendant is given an opportunity to refute the evidence, and the evidence bears "minimal indicia of reliability." *United States v. Rodriguez,* 765 F.2d 1546, 1555 (11th Cir. 1985), quoting *United States v. Reme,* 738 F.2d 1156, 1167 (11th Cir.1984), *cert. denied* 471 U.S. 1104, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985). Although the above cited authorities do not involve a sentencing in which the court is considering ordering restitution, we see no reason the same rule should not apply when a defendant's money is at stake as is applied when his liberty or even his life is in issue.

■ Here, the first part of the test is satisfied because Hairston had ample opportunity at his sentencing hearing to refute the information contained in the Dawkins letter. In order for the defendant to overcome the second part of the test, showing that the letter lacked "minimal indicia of reliability," he must establish "(1) that the challenged evidence is materially false or unreliable, and (2) that it actually served as the basis for the sentence." *Reme,* 738 F.2d at 1167. Here, the Dawkins letter did serve as a basis for the sentence. However, Hairston has not shown that the in-

---

the financial needs of the defendant and such defendant's dependants shall be on the defendant. . . .

**6.** Hairston has not argued that there were factual inaccuracies in the presentence investigation report, or that findings were required by Fed.R. Crim.P. 32(c)(3)(D).

**7.** This court has previously held that the amount of the victim's loss, for purposes of the restitution order, may be established by proof at trial.

*United States v. Barnette,* 800 F.2d 1558, 1571 (11th Cir.1986), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987).

**8.** Similarly, although Hairston did not contest the adequacy of the record regarding the restitution order on the Williams and Upton loans, we find the record to be adequate for review. The Dawkins letter, together with the evidence produced at trial, adequately reflect the basis of that aspect of the court's restitution order.

formation in the letter is materially false or unreliable. The letter was prepared by the Bank's attorney, who had access to correct information, and it contains substantial details as to the amounts of the claims Atlanta Suburbia Estates had against the Bank and how those claims resulted from Hairston's acts. Moreover, the information in the letter was substantially corroborated by the evidence at trial. *See Rodriguez,* 765 F.2d at 1555. Therefore, we find that the hearsay evidence was sufficiently reliable for the district court to consider it in forming the restitution order.[9]

We think the record adequately reflects the basis of the district court's restitution order, so the court was not required by § 3579(a) or § 3580(d) to make specific findings of fact.

### B. *Proof of Amount and Cause of Loss*

■ Next, Hairston argues that the government failed to prove by a preponderance of the evidence the amount of the Bank's loss and that the loss was caused by Hairston's offense. The VWPA provides that if the amount or type of restitution is in dispute, the government has the burden of proving by a preponderance of the evidence "the amount of the loss sustained by [the] victim *as a result of the offense....*" 18 U.S.C. § 3580(d) (emphasis added). Hairston does not argue that $25,000 was incorrect as the amount of the Bank's settlement with Atlanta Suburbia Estates. Rather, he contends that the Bank's settlement figure was higher than it should have been because the Bank did not appraise the property involved and because there was no additional work to be done on the subdivision. Therefore, the Bank's loss was not sustained "as a result of the offense," but by its own unilateral action in settling for that amount with Atlanta Suburbia Estates. Hairston claims

that the government presented no evidence of a causal relation between the acts for which the defendant was convicted and the Bank's loss of $25,000.

We disagree with the defendant's contentions. The government proved at trial, with respect to count 1, that Hairston misapplied $120,000 of the Bank's moneys by making an insider loan in that amount in the name of John Jolly. The government also proved, with respect to counts 8 through 13, that moneys that should have been applied to reduce the principal amount of that loan were not so applied. Moreover, at the sentencing hearing the government presented evidence that all but $25,000 of the $120,000 Jolly loan had been repaid to the Bank by the second mortgage holder, Atlanta Suburbia Estates. The Dawkins letter states that the Bank settled with Atlanta Suburbia Estates for $25,000 on claims held by that entity against the Bank, and that those claims directly resulted from Hairston's misapplication of funds. Specifically, the letter states that Atlanta Suburbia Estates held claims against the bank for $38,000 in misapplied first release funds, $75,000 in additional subdivision work not completed by Hairston, and punitive damages based on fraud by the Bank through its president, Hairston. Although Hairston's attorney suggested in argument possible ways the Bank might have reduced its loss, he offered no evidence at all to rebut the evidence that the Bank had lost $25,000. We conclude that the trial court did not err in finding that the government proved by a preponderance of the evidence the amount of loss caused to the Bank by the defendant's criminal activities.

### C. *Defining "Victims" Under The VWPA*

■ Hairston argues that Williams and Upton were not victims within the meaning

---

**9.** The defendant argues that *United States v. Franklin,* 792 F.2d 998 (11th Cir.1986), calls for a different result. In that case, the victim submitted a list of stolen items and their market values for consideration by the court at sentencing. The district court refused to consider the list because it was not authenticated. On appeal, however, this court did not rule on the

propriety of the trial court's decision. *See id.* at 999 n. 2. Therefore, *Franklin* may not be relied on, despite defendant's suggestion, for the proposition that, at a sentencing hearing, hearsay evidence is treated differently when restitution is a possibility than when incarceration is the only penalty being considered.

of the VWPA, and therefore were not entitled to restitution. The VWPA does not explicitly define the term "victim." Congress, however, indicated that a "victim" should include a person who suffers injury as a result of the defendant's actions surrounding the commission of the offense, regardless of whether those actions are elements of the offense charged. *See* S.Rep. No. 532, 97th Cong., 2d Sess. 13, *reprinted in* 1982 U.S.Code Cong. & Ad. News 2515, 2519 (Senate Report accompanying the bill states that the Committee intended to allow restitution to an injured bank teller when the crime charged was bank robbery and not a crime against the teller, and that the definition of "victims" is purposely broad to include indirect victims, such as family members of homicide victims). *See also United States v. Durham,* 755 F.2d 511, 513 (6th Cir.1985) (adopting a broad definition of "victim" and affirming an order of restitution to the insurer of an automobile destroyed by arson during the commission of a bank robbery, even though the defendant was not charged with arson); *United States v. Richard,* 738 F.2d 1120, 1123 (10th Cir. 1984) (holding that restitution is proper if the defendant created the circumstances under which a loss could occur).

In the instant case, David Williams and Robert Upton were "victims" within the meaning of the VWPA. They completed work for Hairston and were assured by him as the bank president that the moneys received in the form of loans were payment for work performed and would be repaid to the Bank by John Jolly. Hairston presented those loans to the Bank without disclosing his interest; this was a misapplication of the Bank's funds, for which he was convicted. That Williams and Upton repaid the loans does not make them any less the victims of Hairston's fraudulent scheme. Hairston should not be allowed to benefit from their repayment. Williams and Upton were injured as a result of Hairston's actions surrounding the commission of his crime, and therefore are victims within the meaning of the VWPA. Additionally, we find that the government proved by a preponderance of the evidence the amount of loss suffered by Williams and Upton and that those losses were caused by Hairston's activities. Therefore, the restitution order with regard to those two loans was proper.

### D. *Effect of the Settlement in State Court Civil Case*

■ Finally, Hairston argues that Robert Upton is not entitled to receive restitution because the dismissal with prejudice in the state court of his civil action against Hairston precludes any subsequent claim in federal court on the same subject matter. We disagree.

The statutory full faith and credit provision, 28 U.S.C. § 1738, has the effect of preventing Upton from maintaining an action in federal court on his claim against Hairston. However, it does not prevent a federal court judge from imposing punishment on Hairston in a federal criminal case. Restitution is not a civil matter; it is a criminal penalty meant to have strong deterrent and rehabilitative effect. *See Kelly v. Robinson,* 479 U.S. 36, 49, 107 S.Ct. 353, 360, 93 L.Ed.2d 216 (1986). The issue at sentencing is whether the penal purposes of the VWPA are furthered by ordering restitution. That issue was not and could not have been litigated in the civil case. *See United States v. Rico Indus., Inc.,* 854 F.2d 710, 715 (5th Cir.1988), *cert. denied,* ——— U.S. ———, 109 S.Ct. 1529, 103 L.Ed.2d 834 (1989). However, if the civil action was based on the same acts of the defendant that are the predicate of the criminal conviction, then any settlement between the defendant and the victim in the civil case should be one of the factors considered by the trial court in forming the restitution order. *See id.*

Here, the trial court considered the settlement between Hairston, Upton, and the Bank when forming the order of restitution. The restitution order in this case credited Hairston with the $3,000 that he paid toward the settlement in the Upton civil case. Therefore, we find no error in the restitution order involving the Upton loan.

**1356**

For the foregoing reasons, the judgment of the district court is

AFFIRMED.