NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1015n.06

No. 11-4032

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Sep 17, 2012*

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| JAMES J. MAY, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

O P I N I O N

BEFORE: MERRITT, MOORE, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** James May pleaded guilty to a single count of bank fraud in violation of 18 U.S.C. § 1344. He was sentenced to 36 months of imprisonment and three years of supervised release. The district court also ordered May to pay $1,682,100 in restitution in accordance with 18 U.S.C. § 3663. May later filed a motion in the district court to "deem restitution satisfied" on the grounds that a year after sentencing, during civil litigation between May and the bank he defrauded, he had entered into a settlement agreement with the bank releasing him from his obligation to pay the court ordered restitution. The district court denied May's motion, but agreed to set-off any amounts May paid to the bank under the settlement agreement against the restitution order. May appealed the district court's decision denying his motion. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Appellant James May owned Jim May Auto Sales, LLC., an RV and used car dealership in Findlay, Ohio. May's dealership had several floor plan financing agreements with First Financial Bank.[1] The agreements collateralized the dealership's vehicles and also required that after a vehicle was sold, the dealership was to promptly pay First Financial the amount due for the financing of that vehicle. In October 2008, May directed one of his employees to submit false documentation to First Financial in order to obtain floor plan financing for vehicles that May did not own. Further, May also sold several vehicles that were part of other floor plan agreements and deliberately did not repay First Financial from the proceeds of those sales.

As a result of May's actions, First Financial loaned May $1,289,501 for 37 vehicles that May did not own, and May failed to pay the bank $392,599 for ten vehicles that were sold but whose proceeds were never paid back to the bank. On October 7, 2009, May was indicted for knowingly committing bank fraud, in violation of 18 U.S.C. § 1344. He pleaded guilty on December 6, 2009. On May 3, 2010, May was sentenced to 36 months' imprisonment and three years' supervised release. The district court also ordered him to pay $1,682,100 in restitution to First Financial under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663(a)(1)(A) (providing that a court shall order restitution to any victim of an offense).[2]

---

[1]Floor plan financing is a revolving line of credit wherein loans are made against a specific piece of collateral. When each piece of collateral is sold by the dealer, the loan advance against that collateral is repaid. http://www.sba.gov/content/what-floor-plan-financing.

[2]Prior to enactment of the MVRA, which amended the Victim and Witness Protection Act of 1982, restitution rested within the discretion of the district court. *United States v. Scott*, 74 F.3d

In August 2009, two months prior to his federal indictment, May had sued First Financial in the Hancock County Court of Common Pleas for mismanaging the assets the bank seized after discovering May's fraud. *May v. First Financial Bank, Nat'l Association,* Case No. 2009 CV 00677. Importantly, for purposes of this appeal, on June 23, 2011, the parties resolved the civil suit by entering into a settlement agreement. The Settlement Agreement provides for May to pay First Financial $100,000 in return for First Financial releasing a $2,357,870.80 cognovit civil judgment that the bank obtained against him.[3] *First Financial Bank, Nat'l Association v. May, et al.,* Case No. 2009 CV 00859. The Settlement Agreement also states that the cognovit judgment "includes amounts of Federal Restitution ordered by the United States District Court for the Northern District of Ohio." In exchange for these releases by the bank, May agreed to release all pending claims against First Financial.

Seeking to capitalize on the bank's willingness to free him from his obligations, May returned to the district court that sentenced him and filed a motion to deem restitution satisfied. The district court denied May's motion and in doing so, predominantly relied upon this Court's prior

---

107, 110 (6th Cir. 1996). The MVRA abolished the district court's discretion and now requires a district court to order full restitution when sentencing a defendant convicted of a crime of violence, an offense against property, or an offense related to tampering with consumer products. *See* 18 U.S.C. §§ 3663A(a)(1); 3663A(c)(1); and 3664(f)(1)(A). Offenses against property include bank fraud. *United States v. McIntosh*, 198 F.3d 995, 1003 (7th Cir. 2000); *United States v. Scherer*, No. 01-1088, slip op. at *1 (6th Cir. August 10, 2001). Accordingly, the district court was required to order May to pay restitution.

[3]"A cognovit is a legal device by which a debtor gives advance consent to a holder's obtaining a judgment against him or her without notice or hearing." 46 Am. Jur. 2d *Judgments* § 211 (2012) (internal citations omitted).

decision in *United States v. Bearden*, 274 F.3d 1031 (6th Cir. 2001). Applying *Bearden*, the district court concluded, "'a private settlement between a criminal wrongdoer and his victim releasing the wrongdoer from further liability does not preclude a district court from imposing a restitution order for the same underlying wrong.'" Dist. Ct. Opinion at 1 (quoting *Bearden*, 274 F.3d at 1041). The district court further reasoned, "the penal goals of the criminal justice system would be undermined by allowing the settlement agreement here to replace this Court's restitution order." Dist. Ct. Opinion at 2. Finally, "to avoid double-counting," the court entitled May to set-off any amounts paid to First Financial under the Settlement Agreement, and accordingly reduce the amount of restitution he owed. Dist. Ct. Opinion at 2. May filed a timely appeal.

## II. JURISDICTION

As a threshold matter, we must first determine whether the district court had jurisdiction to entertain May's motion to "deem restitution satisfied." A district court's power to revisit a sentence once imposed is extremely limited. Once a court sentences a criminal defendant, it generally has jurisdiction to continue hearing related issues only when authorized by statute or rule. *Carlisle v. United States*, 517 U.S. 416 (1996). May's statement of jurisdiction in his brief to this Court fails to specify any grounds for the district court to take jurisdiction of his motion, which was made more than one year after his May 2010 sentence. In order for May to directly appeal his sentence, including the restitution order, he would have had to file his notice of appeal in the district court within 14 days after the entry of judgment against him. Fed. R. App. P. 4(b). He did just that. The district court's judgment was entered on May 4, 2010. May timely filed a notice of appeal on May 14, 2010 attacking the judgment and sentence. But on August 13, 2010, he voluntarily dismissed

his appeal under Federal Rule of Appellate Procedure 42(b). Accordingly, since May voluntarily

dismissed his direct appeal, there must be some other basis under which the district court can

reconsider its restitution order.

The MVRA provides for certain circumstances under which the district court can revisit an

order of restitution. 18 U.S.C. § 3664(o) provides in part:

> A sentence that imposes an order of restitution is a final judgment notwithstanding
> the fact that--
> (1) such a sentence can subsequently be--
> (A) corrected under Rule 35 of the Federal Rules of Criminal Procedure and section
> 3742 of chapter 235 of this title;
> (B) appealed and modified under section 3742;
> (C) amended under subsection (d)(5); or
> (D) adjusted under section 3664(k), 3572, or 3613A; or
> (2) the defendant may be resentenced under section 3565 or 3614.

None of these exceptions apply in this case.[4]

---

[4]Rule 35 of the Federal Rules of Criminal Procedure provides for corrections for "arithmetical, technical, or other clear error," or a reduction in sentence for a defendant's substantial assistance in an investigation or prosecution. Fed. R. Crim. Pro. 35(a). Those issues are not present here. 18 U.S.C. § 3742 governs sentencing appeals where the sentence was imposed in violation of law, was incorrect under the sentencing guidelines, was greater than the guideline range, or was imposed for an offense for which there is no guideline and is plainly unreasonable. 18 U.S.C. § 3742(a)(1)-(4). None of those issues are present here. 18 U.S.C. § 3664(d)(5) permits the district court to revisit the restitution order where the victim subsequently discovers further losses, an issue not contemplated here. 18 U.S.C. § 3664(k) allows the district court to adjust the restitution payment schedule or require immediate payment in full if the defendant notifies the court of any material change in economic circumstances. May is not arguing that his material economic circumstances have changed; he is simply arguing he no longer has a financial obligation to the bank. 18 U.S.C. § 3572 governs the ability of the district court to order fines in addition to or with restitution. Fines are not at issue here. Thus, similarly, 18 U.S.C. § 3613(a), providing for the governments ability to bring a civil lawsuit to enforce a judgment imposing a fine, does not apply here. 18 U.S.C. § 3565 governs the district court's ability to revoke a sentence of probation, and 18 U.S.C. § 3614 allows the court to resentence a defendant to any sentence that may have originally been imposed if the defendant fails to pay a fine or restitution. Neither of those resentencing provisions apply in the

However, 18 U.S.C. § 3664(j)(2) provides, "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any State civil proceeding, to the extent provided by the law of the State." 18 U.S.C. § 3664(j)(2)(B). Accordingly, the district court had jurisdiction to consider the amount of May's restitution order in light of any amount of compensatory damages recovered by First Financial in the state civil proceeding. But that is all the district court had the power to consider under 18 U.S.C. § 3664(j)(2)(B). May has not come forward with any other statute or rule giving the district court the ability to deem May's entire restitution satisfied in light of his civil settlement agreement. It is with these limitations in mind that we review the district court's decision in this case.

### III.  STANDARD OF REVIEW

We review de novo whether a restitution order is permitted, and if we then determine that restitution is permissible, the amount of restitution ordered by the district court is reviewed for an abuse of discretion. *United States v. Bogart*, 576 F.3d 565, 569 (6th Cir. 2009). We therefore review the district court's decision under § 18 U.S.C. 3664(j)(2)(B), and its denial of May's motion to deem restitution satisfied for an abuse of discretion.

### IV.  ANALYSIS

While May submits several arguments as to why the district court erred, each of which will be addressed below, the outcome of this appeal mainly hinges on our application of *United States*

present matter.

*v. Bearden* to the facts of this case. The restitution issue in *Bearden* was one of first impression. There, the defendant was convicted of interstate transportation of stolen goods. *Bearden*, 274 F.3d at 1034. The goods had been stolen from the warehouse of Pomeroy Computer Resources. *Id.* Prior to sentencing, Bearden paid Pomeroy's insurance company, CNA, $47,000 in exchange for CNA releasing Bearden from all further claims and liability for Pomeroy's losses. *Id.* at 1035. At his subsequent sentencing, Bearden was ordered by pay $161,590 restitution, but the court gave him credit for the $47,000 he already paid. On appeal, in addition to several other issues not applicable here, Bearden argued that in light of his settlement with CNA, the district court should not have ordered him to pay any restitution. *Id.* at 1040.

The issue before us in *Bearden* was "whether a settlement or release executed by the victim of a crime prevents a sentencing court from ordering restitution." *Bearden*, 274 F.3d at 1040. In resolving that question, we squarely held that "a private settlement between a criminal wrongdoer and his victim releasing the wrongdoer from further liability does not preclude a district court from imposing a restitution order for the same underlying wrong." *Id.* at 1041. We also recognized that our decision was in line with the other circuits that had addressed the issue. *Id.* at 1041 (citing *United States v. Parsons*, 141 F.3d 386, 393 (1st Cir. 1998); *United States v. Sheinbaum*, 136 F.3d 443, 448 (5th Cir. 1998); *United States v. Vetter*, 895 F.2d 456, 459 (8th Cir. 1990); *United States v. Hairston*, 888 F.2d 1349, 1355 (11th Cir. 1989); *United States v. Cloud*, 872 F.2d 846, 854 (9th Cir. 1989)).[5]

---

[5] The government points out that the Tenth Circuit decided a case that held contrary to *Bearden*. *See United States v. Garcia-Castillo*, 127 F. App'x. 385, 390 (10th Cir. 2005) (stating that

We further noted that all of these cases relied upon the Supreme Court's decision in *Kelly v. Robinson*, 479 U.S. 36 (1986), for the principle that restitution ordered as part of a criminal sentence is punitive rather than compensatory in nature. In *Kelly*, the Court observed that "[a]lthough restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution." 479 U.S. at 52. On this basis, we made clear in *Bearden* that "private individuals should not be allowed to thwart the penal goals of the criminal justice system by entering into releases or settlements with wrongdoers." 274 F.3d at 1041.

This Court recently reaffirmed *Bearden's* holding in *United States v. Elson*, 577 F.3d 713, 733-34 (6th Cir. 2009), and also applied it in the context of a settlement agreement entered into *after* a sentencing court's restitution order, as in the present case, rather than prior to the restitution order, as in *Bearden*. *F.D.I.C. v. Dover*, 453 F.3d 710, 717 (6th Cir. 2006).

Notably, although *Bearden* and its progeny clearly hold that private settlement agreements cannot preclude district courts from ordering restitution, we have also recognized that the MVRA does not permit victims to obtain multiple recoveries for the same loss. Thus, when determining the amount of restitution under the MVRA, the court must reduce restitution by any amount the victim

---

restitution ordered under the MVRA is not criminal punishment in the context of deciding whether a restitution order included judicial fact-finding that increased a criminal punishment). But a subsequent Tenth Circuit case, without discussing *Garcia-Castillo*, held that a "settlement does not bar restitution" under the MVRA, noting that "[a] private settlement cannot abrogate [the mandatory] language" of the statute. *United States v. Gallant*, 537 F.3d 1202, 1250 (10th Cir. 2008). Accordingly, this more recent and published Tenth Circuit decision coincides with all of the other circuits to have ruled on the issue.

received as part of a civil settlement, in order to avoid the undesirable result of restitution effectuating a double recovery. *Elson*, 577 F.3d at 734; *see also United States v. McDaniel*, 398 F.3d 540, 555 (6th Cir. 2005) (noting that "the restitution statutes do not permit victims to obtain multiple recoveries for the same loss.").

There is no reason for us to reach a conclusion contrary to the rule in *Bearden* in the present case. May argues that the Settlement Agreement "specifically includ[ed] a release of any amounts due pursuant to 'Federal Restitution Order by the United States District Court for the Northern District of Ohio,'" and therefore the district court erred by denying his motion to deem restitution satisfied. Appellant Br. at 8. May is correct that the recitals portion of the Settlement Agreement states that the $2,357,870.80 cognovit judgment (referred to as the "Money Judgment") included amounts from the Restitution Order. Settlement Agreement at 1. He is also correct that the Agreement later sets forth the parties' mutual release of present and future claims, including that First Financial agreed to release May from "any and all claims, demands, actions or causes of action which were or could have been asserted in the . . . action giving rise to the Money Judgment." Settlement Agreement at 3.

Nonetheless, the general release of liability in this case falls squarely under this Court's holding in *Bearden* that "a private settlement between a criminal wrongdoer and his victim releasing the wrongdoer from further liability does not preclude a district court from imposing a restitution order for the same underlying wrong." 453 F.3d at 1041; *see also, F.D.I.C.*, 453 F.3d at 717 (applying *Bearden* in the context of a settlement agreement entered into *after* the restitution order rather than prior).

That the Restitution Order was incorporated by reference in the Settlement Agreement is inconsequential. The underlying principles governing when and why restitution is ordered remain the same. Restitution ordered as part of a criminal sentence is punitive, and even though it appears to be compensatory, "the context in which it is imposed undermines that conclusion." *Kelly*, 479 U.S. at 52. Further, we have made clear that "private individuals should not be allowed to thwart the penal goals of the criminal justice system by entering into releases or settlements with wrongdoers." *Bearden*, 274 F.3d at 1041.

May and First Financial, two private parties, entered into an agreement purporting to absolve May of his restitution obligations ordered by the federal district court as part of his criminal sentence. Allowing the terms of this private agreement to completely discharge May's restitution obligations would be completely contrary to our limited jurisdiction under 18 U.S.C. § 3664(j)(2) and our holding in *Bearden* and its progeny. *United States v. Roper*, 266 F.3d 526, 530 (6th Cir. 2001) (prior published opinions of this court are binding unless an intervening decision of the United States Supreme Court requires modification of the prior opinion or it is overruled by this court sitting en banc). Accordingly, the district court did not abuse its discretion in relying on *Bearden* and denying May's motion to deem restitution satisfied.

Despite the fact that *Bearden* forecloses relief in this case, May makes two additional arguments that the district court here erred. First, May argues that the Supreme Court's decision in *Matsushita Electric Industrial Co., Ltd. v. Epstein*, 516 U.S. 367 (1996), and our decision in *McDaniel*, 398 F.3d 540, stand for the proposition that a "state court judgment could extinguish

federal rights," and thus in denying his Motion, the district court "undermined the authority of a state court to resolve a dispute before it."  Appellant Br. at 11, 13.

In *Matsushita*, the Supreme Court addressed whether the Full Faith and Credit Act applied to give preclusive effect to a state court judgment incorporating a class action settlement that extinguished exclusively federal claims. *Matsushita*, 516 U.S. at 372-373.  The Court concluded that the judgment of the state court in that case, approving the settlement that extinguished the federal claims, was the product of a "judicial proceeding" as contemplated by the Full Faith and Credit Act. Thus, the state court judgment was entitled to full faith and credit and the exclusively federal claims were extinguished.  *Id.* at 375.

But the Full Faith and Credit Act is inapplicable to the district court's order that May pay restitution as part of his criminal sentence.  The statutory full faith and credit provision, 28 U.S.C. § 1738, has the effect of preventing a party from maintaining an action in federal court on its claim against another party.  28 U.S.C. § 1738.  But "it does not prevent a federal court judge from imposing punishment on [a defendant] in a federal criminal case." *United States v. Hairston*, 888 F.2d 1349, 1355 (11th Cir. 1989).[6]  In *Hairston*, the defendant argued that the individual he defrauded was not entitled to receive the restitution ordered as part of his federal sentence because the parties had settled, and as part of the settlement, the state court dismissed the claims. *Hairston*, 888 F.2d at 1351 n.3, 1355.

The Eleventh Circuit disagreed:

---

[6]  We cited *Hairston* with approval in *Bearden*.  *Bearden*, 274 F.3d at 1041.

> The issue at sentencing is whether the penal purposes of the VWPA are furthered by ordering restitution. That issue was not and could not have been litigated in the civil case. However, if the civil action was based on the same acts of the defendant that are the predicate of the criminal conviction, then any settlement between the defendant and the victim in the civil case should be one of the factors considered by the trial court in forming the restitution order.

> Here, the trial court considered the settlement between Hairston, Upton, and the Bank when forming the order of restitution. The restitution order in this case credited Hairston with the $3,000 that he paid toward the settlement in the Upton civil case. Therefore, we find no error in the restitution order involving the Upton loan.

*Hairston*, 888 F.2d at 1355 (citations omitted). May's claim that the Full Faith and Credit Act applies to the restitution order in the district court's judgment of sentence fails on these same grounds. As we recognized in *Bearden*, the restitution issue at his sentencing was rooted in the penal goals of the criminal justice system. *Bearden*, 274 F.3d at 1041. This issue could not have been litigated in the civil case May filed against First Financial. At most, the parties' Settlement Agreement could have been a factor for the district court to apply while considering any set-off amount under 18 U.S.C. § 3664(j)(2)(B), and in this case it was.

Even though the parties entered the Settlement Agreement after sentence was imposed, May's motion to deem restitution satisfied allowed the district court to reconsider the amount of its original restitution order in light of the Settlement Agreement. The district court appropriately concluded that May was entitled to a set-off of any amounts paid to First Financial as a result of the Settlement Agreement. The district court's decision to allow May to set-off amounts paid under the Agreement is also consistent with our prior acknowledgment that the MVRA does not permit victims to obtain multiple recoveries for the same loss. *Elson*, 577 F.3d at 734.

Further, May's reliance on our decision in *McDaniel* is also misguided. In *McDaniel*, multiple defendants appealed their convictions for conspiracy, theft of U.S. mail, and bank fraud. 398 F.3d at 542. The central issue on appeal was whether the case should be remanded for resentencing in light of a recent decision by the Supreme Court on an issue unrelated to restitution. *Id.* at 540. It was only in a closing paragraph that we discussed the federal district court's restitution order entered as to one of the defendants. *Id.* at 554. Our discussion centered on the mandatory nature of restitution for bank fraud offenses, as well as the need to revisit the restitution order on remand because of the possibility that one of the defrauded banks in that case might double-recover. *Id.* at 555. We noted that prior to his federal conviction, the defendant had been convicted of uttering and publishing in two different Michigan state courts.[7] Both state courts ordered the defendant to pay restitution. *Id.* at 555. Our instruction to the district court on remand was to make sure that the victims already paid under the state court order were not being paid again because of the district court's order. *Id.*

These same concerns are not present here. As discussed above, the district court already appropriately considered the possibility of First Financial double-recovering when it concluded that May was entitled to a set-off based on any amounts he paid to the bank pursuant to the Settlement Agreement. Accordingly, May's argument relying on *McDaniel* is without merit.

---

[7]MICH. COMP. LAWS § 750.249 (making it a crime to "utter and publish as true, any false, forged, altered, or counterfeit record, deed, instrument or other writing . . ., knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud.")(amended 2008).

Finally, May argues that "By failing to hold that the claim to restitution was released, the District Court . . . abridged the parties' right to Freedom of Contract." Appellant Br. at 11. Apart from a single citation to the Contracts Clause of the Constitution (which he erroneously cites as "Article 7, § 10" rather than Article I, § 10), May only weakly supports his Contracts Clause argument with a citation to a single case, *General Motors Corp. v. Romein*, 503 U.S. 181 (1992). But he fails to specify how that case applies to the present matter and merely asserts that in the *General Motors* case "the Court recognized that the Contract Clause requires close scrutiny of any changes in the law that might impair the rights of individuals under a contract." Appellant Br. at 11.

Ordinarily, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). But even assuming May has not waived his argument by not supporting it, it is unclear how the Contracts Clause would help him here where he is challenging the federal district court's denial of his Motion to Deem Restitution Satisfied. The plain language of the Contracts Clause itself affirms that it applies only if a *state or local law* interferes with existing contracts. U.S. Const. art. I, § 10 ("No State shall . . . pass any . . . law impairing the Obligation of Contracts."). In other words, the Contracts Clause does not apply to the federal government. *Peick v. Pension Benefit Guar. Corp.*, 724 F.2d 1247, 1253 (7th Cir. 1983); *see also* Erwin Chemerinsky, Constitutional Law 629 (3d ed. 2006). This Court has affirmed that in order to establish a violation of the Contracts Clause, a plaintiff must demonstrate that a "change in state law has 'operated as a substantial impairment of a contractual relationship.'" *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 313 (6th Cir. 1998) (quoting *Romein*, 503 U.S. at 186).

Here, there has been no change in state law that has substantially impaired May's civil

Settlement Agreement. Accordingly, his argument that the Contracts Clause applies is without merit.

## V. CONCLUSION

For the foregoing reasons, the district court's denial of May's motion to deem restitution

satisfied is **AFFIRMED**.