United States Court of Appeals,

Eleventh Circuit.

Nos. 94-4645, 94-4744.

UNITED STATES of America, Plaintiff-Appellee,

v.

Michael EXARHOS, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellant, Cross-Appellee,

v.

Paul MORRISON, Nelson Hernandez, Defendants-Appellees, Cross-Appellants.

Feb. 17, 1998.

Appeals from the United States District Court for the Southern District of Florida. (No. 93-345-CR-WDF), Wilkie D. Ferguson, Jr., Judge.

Before EDMONDSON, Circuit Judge, and CLARK and WELLFORD[*], Senior Circuit Judges.

WELLFORD, Senior Circuit Judge:

A five-count indictment charged Paul Morrison, Nelson Hernandez, and Michael Exarhos with the following offenses:

Count 1. The defendants conspired in violation of 18 U.S.C. § 371 to:

a. remove and/or alter V.I.N. numbers in violation of 18 U.S.C. § 511;

b. possess stolen vehicles and parts, knowing that the V.I.N. numbers had been altered, with intent to sell or otherwise dispose of such vehicles or parts, in violation of 18 U.S.C. § 2321;  and,

c. export stolen vehicles in violation of 18 U.S.C. § 553(a).

Count 2. Defendants Morrison and Exarhos possessed a vehicle part (Porsche engine) with

[*]Honorable Harry W. Wellford, Senior U.S. Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

intent to sell or otherwise dispose of it in violation of 18 U.S.C. § 2321 and 18 U.S.C. § 2.

Count 3. Defendants Morrison and Exarhos possessed a vehicle part (another Porsche engine) with intent to sell or otherwise dispose of it in violation of 18 U.S.C. § 2321 and 18 U.S.C. § 2.

Count 4. Defendants Morrison and Exarhos possessed a vehicle part (Porsche transmission) with intent to sell or otherwise dispose of it in violation of 18 U.S.C. § 2321 and 18 U.S.C. § 2.

Count 5. Defendant Morrison possessed vehicle parts (Porsche body parts) with intent to sell or otherwise dispose of them in violation of 18 U.S.C. § 2321 and 18 U.S.C. § 2.

After a jury trial, in which no defendant testified, defendant Hernandez was convicted on the count one conspiracy charge, the sole count in which he was charged. Defendant Morrison was convicted on counts one and five, and acquitted on counts two, three, and four. Defendant Exarhos, by contrast, was acquitted of the count one conspiracy charge, and convicted on counts two, three, and four.

Defendant Exarhos filed a late notice of appeal, but after remand by this court, the district court allowed the appeal to go forward, finding "excusable neglect." Among other assertions of error, Exarhos contends that the indictment against him should have been dismissed because it was based, in part, on false evidence. The government also appealed, challenging the district court's calculation of Hernandez and Morrison's sentences. Specifically, the government argues that the district court failed to account for the entire value of the stolen vehicles in calculating the sentences, limiting itself instead to consideration of the value of the parts only. Finally, defendants Hernandez and Morrison cross-appeal, claiming several sentencing errors and arguing that the prosecution improperly commented during closing argument on their silence.

## I. *DISMISSAL OF THE INDICTMENT*

Defendant Exarhos claims that his conviction should be overturned because false evidence

was presented to the grand jury. In his brief, defendant Hernandez incorporates this argument by simply referring to defendant Exarhos' brief. We believe, however, that this issue is fact-specific and relates only to defendant Exarhos, whose contacts with a witness, Gus Nader, form the factual basis for the claim.

On two separate occasions, Nader purchased a stolen Porsche engine from the defendants, paying Exarhos in part by check and in part by cash. Aware of the pending investigation of the defendants, Nader falsified the two bills of sale, forging defendant Exarhos' name on each. Nader later admitted that he forged the documents because he feared possible criminal prosecution himself. Before that admission, however, these altered documents had been turned over to detective Leslie Cravens, who testified before the grand jury as to their existence. However, there is absolutely no indication that the government was aware of Nader's actions at the time it presented the case to the grand jury. Indeed, after becoming privy to Nader's falsification, the prosecution refused to use the documents as part of its case at trial, and notified defense counsel of Nader's actions. At that point, Exarhos moved to have the indictment dismissed, but the district court denied his motion.

A court may not dismiss an indictment, even for prosecutorial misconduct, without a showing " "that the violation substantially influenced the grand jury's decision to indict.' " *Bank of Nova Scotia v. United States,* 487 U.S. 250, 256, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988), *quoting United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring). There are, however, "isolated exceptions to the harmless-error rule." *Bank of Nova Scotia,* 487 U.S. at 256, 108 S.Ct. at 2374; *see also United States v. Kramer,* 864 F.2d 99, 101 (11th Cir.1988) (declining "to adopt such a broad reading of *Mechanik* "). These exceptions are limited, however, to cases "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of

prejudice." *Bank of Nova Scotia,* 487 U.S. at 257, 108 S.Ct. at 2374. The only examples cited in that opinion were race and gender bias in the selection of grand jurors. *Id.*

We cannot conclude that the government's presentation of the forged documents "so compromised" the grand jury proceedings as to render them "fundamentally unfair." The grand jury had before it police investigator Cravens' testimony that he had located two Porsche engines with obliterated or altered identification and that Nader told him he had obtained them from Exarhos with involvement of Morrison. In addition, Cravens testified that Nader had given him copies of the cancelled checks, bearing Exarhos' endorsement, used as partial payment for the engines. Leaving aside the falsified bills of sale, the cancelled checks and other evidence implicating Exarhos' involvement in stolen Porsche engines were sufficient to indict.[1]

We find no merit in Exarhos' first contention, particularly because he failed to make any showing of bad faith or prosecutorial misconduct.[2] *See United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). The district court correctly denied Exarhos' motion to dismiss the indictment.

## II. *PROSECUTORIAL MISCONDUCT*

The second issue on appeal is the defendants' claim that the prosecutor, in his closing argument, improperly commented on their not taking the witness stand. Their claim is based on the following portion of the prosecution rebuttal:

> Ask yourself this: You have a lot of evidence of these defendants' possession of parts with missing vehicle identification numbers; stolen engines. Stolen transmissions. Stolen parts. You have listened to some people tell you how they got these parts. Louis Kimmler a

---

[1]Count Two incorrectly charged that the illegal conduct occurred in January, 1991, rather than March, 1991. Exarhos demonstrated no prejudice in this regard.

[2]Exarhos' principal contention at trial was not that he did not deal with Nader, but rather that he did not know that the engine numbers had been altered or obliterated.

renumbered [sic] engine from Gus Nader. Gus Nader told you he got it from Paul Morrison and Michael Exarhos. What you have not seen is where the defendants got these vehicles from.

Immediately, defendants' counsel objected. The prosecutor explained that he had been prematurely cut off, and that he was preparing to address this evidence in the case. He was allowed to continue his rebuttal, stating:

> The only testimony you heard that explains how they came into possession of all these parts is from Jesus Pintado, their partner in crime. At least Paul Morrison's partner in crime, who told you how Paul explained to him that they stole Porsches; that they removed the parts; that they ground the numbers off. They stored the stolen parts in warehouses, and later they put the cars back together again, and if they tried to export them or they would sell them. That is exactly what all the circumstantial evidence and physical evidence shows you as well.

Having provided what we believe was an adequate response, the prosecutor later stated:

> [Defense attorney] Klaus suggested in his closing argument that the defendants could be involved in some kind of legitimate rebuilding of automobiles; buying salvage and putting them back together. The problem with that is that if you are legitimately buying parts, putting parts back together, you have to have receipts.
>
> All of these warehouses were searched. There was not one receipt; not one canceled check. There was not one bill of sale.
>
> There was not one shred of evidence, and in this trial there has not been one shred of evidence showing you that any of these defendants paid one cent to one legitimate businessman for an automobile part.
>
> Why is that? They did not need to. They stole everything they needed. They sold it and they exported it. They committed the crimes charged, and they should be found guilty.

At this point, counsel for Hernandez renewed his motion for a mistrial on the basis that the prosecutor's latter comments about the absence of receipts only compounded the problems identified earlier. After hearing argument from the parties, the district court refused to grant a mistrial.

Our precedent distinguishes between direct and indirect references to a defendant's silence, concluding that indirect references, such as the one here, are not reversible error *per se. United States v. Norton,* 867 F.2d 1354, 1364 (11th Cir.1989). Instead, "the court must assess the impact

of the statement in terms of the context in which it was made." *Id.* A prosecutor's comment will not be considered an impermissible reference to a defendant's silence unless (1) it was the government's " "manifest intention' " to do so, or (2) it "was of such a character that a jury would "naturally and necessarily' take it to be a comment on the defendant's silence." *Id., quoting United States v. Rosenthal,* 793 F.2d 1214, 1243 (11th Cir.1986). We review a district judge's determination of prosecutorial intent or jury effect for abuse of discretion "because she has the opportunity to observe the prosecutor's demeanor first hand." *United States v. Delgado,* 56 F.3d 1357, 1369 (11th Cir.1995).

As in *Norton,* the prosecutor in this case did not refer directly to the defendants' decision not to testify. The statement that raised the first objection referred instead to the quality (or lack thereof) of the defense's evidence and the defense's failure to rebut the necessary inferences created by the government's case. Similarly, the second objection was also properly denied. Defense counsel's suggestion that the defendants were involved in a legitimate business invited the prosecution's rebuttal regarding the complete absence of receipts. The prosecution's statement undermined the effectiveness of that defense strategy. Further, in context, it is clear that the comments did not require the jury to infer anything from the defendants' failure to testify; the prosecutor merely invited the jury to draw a negative inference from the fact that thorough searches in various locations revealed no receipts at all.

In sum, there is no basis upon which we can conclude that the prosecutor's comments were improper. There was no error in the district court's ruling.

### III. *SENTENCING CHALLENGES*

There are three sentencing issues raised in this appeal. First, the government claims that the district court failed to identify properly the loss attributable to Hernandez and Morrison in

calculating their sentences for conspiracy. The government argues that it was error to consider only the value of the stolen parts, rather than the value of the vehicles from which they came, in calculating the total loss from the scheme.[3] Second, Hernandez and Morrison claim that the district court erred by enhancing their sentence for using a "special skill" in committing their crime. Finally, Hernandez and Morrison contend that the district court improperly ordered them to pay restitution because it failed to consider their inability to pay.

A. *Relevant Conduct and Value*

The jury found Hernandez and Morrison guilty of conspiracy to alter or remove Vehicle Identification Numbers ("V.I.N.'s"), in violation of 18 U.S.C. § 371. The jury also found Morrison guilty of possessing altered motor vehicle parts with intent to sell, in violation of 18 U.S.C. §§ 2321 and 2. These verdicts are supported by the record in the case. The evidence could fairly and reasonably be interpreted to show that the defendants were involved in a professional auto theft and renumbering scheme. In addition to selling stolen vehicle parts whose V.I.N.'s the defendants had altered or destroyed, there was evidence that the defendants also devised a method of selling stolen cars with legal titles.[4]

The presentence reports of Morrison and Hernandez listed a total of twenty-one stolen vehicles and parts that the Auto Theft Task Force attributed to the defendants. In most of these

---

[3]Defendants Hernandez and Morrison purport to cross-appeal this issue, claiming that the district court improperly held them accountable for the full value of the cars. Clearly, however, this is the basis for the *government's* appeal.

[4]The defendants would steal imported sports cars, strip them of their major components, remove or alter the components' identification numbers, and store the parts in warehouses which the defendants controlled, or to which they had access. Morrison and Hernandez (and probably Exarhos) would then abandon the stripped shells of the stolen cars in public places where the police could recover them. They could then purchase the shells at a salvage auction and later reassemble the cars with parts they had stripped and stolen. Defendants would then obtain either a rebuilt or salvage title and sell the automobiles, usually for export.

instances the probation officer attributed to the defendants the value of the entire vehicle. In other instances, the probation officer attributed to the defendants only the value of the parts. The total retail value of the cars and parts listed in the presentence report was $854,000.00, an amount which the government contends should be attributed to Morrison and Hernandez. The government maintains that an application of U.S.S.G. § 2B6.1(b)(1), with the required cross-reference to U.S.S.G. § 2F1.1(b)(1)(L), mandates the addition of eleven levels to these defendants' base offense levels because the retail value of the parts and motor vehicles they stole exceeds $800,000.[5]

The defendants filed objections to the probation officer's calculations in the presentence reports, particularly to the method of calculating retail value. They argued that since they were not charged with, and the jury did not convict them of, stealing cars, these presentence reports incorrectly attributed to them the value of the stolen cars. Alternatively, Hernandez argued that because law enforcement officers had seized only one fully assembled Porsche, the district court should consider only the full value of that single automobile in calculating the retail value of the motor vehicles or parts involved. Hernandez did not deny, however, that evidence at trial linked the two defendants to two of the cars stolen from a car dealer, Palm Imports. Morrison, on the other hand, contended that the court should limit its calculation of retail value to $106,500, the value of

---

[5]The relevant sentencing guideline is as follows:

> § 2B6.1. *Altering or Removing Motor Vehicle Identification Numbers, or Trafficking in Motor Vehicles or Parts with Altered or Obliterated Identification Numbers*
>
> ...
>
> (b) Specific Offense Characteristics
>
> > (1) If the retail value of the motor vehicles or parts involved exceeded $2,000, increase the offense level by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit).

the parts found.

The government argued that the district court should consider the full scope of the defendants' relevant conduct—which included stealing cars, as well as trafficking in stolen vehicles—in calculating their sentences. The prosecution maintained that even if the proof did not show theft of every car, the defendants knowingly dealt in parts from stolen cars, and their knowing conduct required the court to attribute full value of the vehicles to them.

The district judge enhanced Morrison's base offense level by seven, explaining: "My own calculations would bring it down to instead of plus eleven, a plus seven [for loss valued at more than $120,000 but less than $200,000]. Let's go with that." When the prosecutor sought clarification of the court's ruling, the court explained that it was considering only the value of the parts, not the vehicles themselves. Applying that same standard of calculation to Hernandez, the judge likewise enhanced his base offense level by seven.

This phase of sentencing was, no doubt, most difficult for the district judge, particularly for one who lacked long experience in dealing with complex sentencing problems such as this case presented. Although sentencing responsibility and determination remains primarily a problem for the sentencing court, particularly in assessing the value of loss in a case of this type, the question we address is whether the district court acted under any misapprehension as to its authority under the applicable law and guidelines when it limited the valuation figure from relevant conduct to the value of the stolen parts involved, plus one or possibly two stolen vehicles.

We review the sentencing court's findings of fact for clear error and review the application of the sentencing guidelines to the facts *de novo. United States v. Williams,* 51 F.3d 1004, 1011 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 258, 133 L.Ed.2d 182 (1995). Contrary to the defendants' contentions, a district court may consider, for purpose of sentencing, relevant conduct

not contained in the indictment. *See United States v. Ignancio Munio,* 909 F.2d 436, 438-39 (11th Cir.1990).

We believe that the record, especially the testimony of Jesus Pintado, supports attributing to Morrison and Hernandez a higher value of loss, reflecting the worth of stolen cars tied directly to them. However, we do not necessarily agree with the government's contention that the much higher values reflected in the presentence reports were appropriate.

Jesus Pintado, a convicted car thief testifying on behalf of the government pursuant to a cooperation agreement, testified that Morrison and Hernandez admitted to him that they stole cars, describing their methods. Specifically, they admitted to Pintado that they had stolen a Mazda RX7 and several Porsches from a dealership, and that Morrison had stolen an Acura NSX and another Porsche, which the police later recovered in Jacksonville. The owner of the Acura NSX identified Morrison as someone he had seen closely examining his car, the parts of which law enforcement officers later found, covered with Morrison's and Hernandez's fingerprints, in a warehouse rented by Morrison and Hernandez. In addition, law enforcement officers found parts of cars that the defendants admitted to stealing, including parts of a car stolen from Palm Imports, inside their warehouses. We believe, based upon Pintado's uncontested proof, that the district court clearly erred in not attributing to the defendants at least the value of these stolen cars, plus other stolen parts that were found in the various warehouses operated or controlled by these defendants.

Accordingly, on the question of relevant conduct enhancements, we REVERSE and REMAND for further consideration by the district court of the extent of the loss occasioned by these two defendants, including uncharged conduct directly involving the closely related thefts of motor vehicles.

B. *Special Skills Enhancement*

We find little merit in defendants' second contention: that the district court erred in enhancing their sentences for use of a special skill in commission of the crime. Counsel's claim at oral argument that anyone with little training or sophistication could alter, remove, or obliterate identification tags and numbers from stolen automobile parts strains credulity. There was no error, under the evidence presented prior to and during the sentencing hearing, in the district court's conclusion that it did indeed require special skills to employ the means, methods, and devices used by defendants to conceal the thefts of parts (and of cars) involved in this case. These defendants knew where identifying symbols and numbers were located, how to remove or obscure them, how effectively to avoid anti-theft devices, and how efficiently to dismantle vehicles and purloin parts.

Section 3B1.3 of the sentencing guidelines requires a two-level enhancement where a defendant "used a special skill, in a manner that significantly facilitated the commission or concealment of the offense...." U.S.S.G. § 3B1.3. As defined by the guidelines, a " "[s]pecial skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing." Comment. 2 to U.S.S.G. § 3B1.3.

Morrison and Hernandez most definitely possessed special skills fitting this description and used them in carrying out their scheme. Jesus Pintado testified that he had taught Morrison how to steal a Porsche with a sophisticated alarm system. In addition, Hernandez was intimately familiar with anti-theft devices, as he was employed by an auto security installation business. Moreover, as the prosecutor explained, the remote locations of the V.I.N.'s require anyone seeking to obliterate or re-stamp them to possess specialized knowledge and mechanical skill. Dismantling cars—not to mention abandoning them, recovering the shells, and then putting the cars back together—involves a combination of skills not possessed by the general public. Since there was abundant evidence to set apart defendants' nefarious skills from those possessed by the general

public, *see United States v. Malgoza,* 2 F.3d 1107 (11th Cir.1993), we AFFIRM the district court's two-level enhancement under U.S.S.G. § 3B1.3.

C. *Restitution*

Defendants Morrison and Hernandez argue that the district court failed to make specific findings in support of its joint and several order obligating them to pay restitution in the amount of $120,000, the loss of value the district court used to enhance their base offense levels. Neither defendant, however, made any specific objections at the sentencing hearing to this aspect of the court's decision. Although the district judge referred to Morrison's potential "to make restitution payments on a monthly installment basis," the presentence report indicated that Morrison and Hernandez might not be able to pay a fine, and none was imposed. Morrison objected only that there was no "substantial evidence to support the restitution order."

Under the circumstances, we find no error with respect to the district court's restitution order as to defendant Hernandez, who is deemed to have waived his argument on that score by not presenting it at the sentencing hearing. *See United States v. Maurice,* 69 F.3d 1553, 1558 (11th Cir.1995).

With respect to Morrison, we find that he did present some semblance of an argument about restitution at the sentencing hearing, although it was neither specific nor helpful to the district judge in reaching his decision. The district court had substantial evidence before it that Morrison was the leader of both the sophisticated scheme to dismantle and reassemble expensive cars and the ring dealing in stolen parts, and there is evidence that he caused losses possibly exceeding $500,000 to various parties by his thefts and other illegal activities. Yet the district court relieved Morrison of any obligation to pay a fine.

The background commentary of U.S.S.G. § 5E1.1 (1995) states: "Section 3553(a)(7) of Title

18 requires the court, "in determining the particular sentence to be imposed,' to consider "the need to provide restitution to victims of the offense.'" The background commentary further indicates that the court should " "reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties *with a view to achieving fairness to the victim*.' " U.S.S.G. § 5E1.1 Background Comment. (1995) (emphasis added), *quoting* the legislative history of the precursor to 18 U.S.C. § 3663.

In a Victim and Witness Protection Act case, this court stated, with regard to restitution:

> We agree with the courts that have declined to adopt a rigid rule requiring district courts to make findings of fact whenever they impose an order of restitution under the VWPA. The plain language of §§ 3579(a) and 3580(d) required only that the district court "consider" the listed factors and resolve disputes by a preponderance of the evidence. There was no requirement that specific findings be made on each factor. Moreover, we agree with the Second Circuit that such fact finding might unnecessarily encumber sentencing proceedings.

*United States v. Hairston,* 888 F.2d 1349, 1352 (11th Cir.1989). *Hairston* added, quoting *United States v. Patterson,* 837 F.2d 182, 183-84 (5th Cir.1988):

> The decision to assign reasons is committed to the sound discretion of the district court, guided by this singular inquiry—absent an assignment of its reasons, does the record contain sufficient data for the appellate court to perform its mandated review? If the record provides an adequate basis for that review, the court need not assign specific reasons for its decision to order full restitution.

*Hairston,* 888 F.2d at 1353.

We believe that the record is adequate for us to perform appellate review as to the assessment of restitution liability against Morrison. The district court had before it information about extensive losses to victims, Morrison's limited resources and inability to pay, his past employment, and uncertainties about the precise extent of the losses. We believe that *United States v. Newman,* 6 F.3d 623, 631 (9th Cir.1993), was substantially correct in holding that:

> 18 U.S.C. § 3664(a) requires the sentencing court to consider the defendant's financial resources and earning ability in determining the amount of restitution to be paid.

*United States v. Ramilo,* 986 F.2d 333, 335 (9th Cir.1993). Section 3664(a) does not require the court to make express findings of fact regarding financial resources and earning ability: it merely provides that the court "shall consider" a variety of factors, including the defendant's financial resources, financial needs, and earning capacity. *United States v. Cannizzaro,* 871 F.2d 809, 810 (9th Cir.), *cert. denied,* 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 195 (1989). The court has broad discretion to determine the type and amount of evidence it deems relevant, *id.* at 811, but the court is not free to disregard the statutory requirements.

Here, while the district court might well have made more detailed findings to assist us in our task, the court did at least "consider" the necessary factors, and it made an expeditious decision, which was not unreasonable under the circumstances, to impose a restitution requirement considerably lower than the victims' indicated losses from the conspiratorial scheme.

Even if Morrison (and Hernandez) were deemed virtually indigent at the time of sentencing, the district court is not precluded from ordering restitution.

A sentencing court is not prohibited from imposing restitution even on a defendant who is indigent at the time of sentencing so long as the record indicates that the court considered the defendant's future ability to pay.... In addition, "at the time restitution is ordered the record must reflect some evidence the defendant may be able to pay restitution in the amount ordered in the future."

*Newman,* 6 F.3d at 631 (citations omitted), *quoting United States v. Ramilo,* 986 F.2d 333, 336 (9th Cir.1993). "Indigency is not necessarily a permanent condition." *United States v. Bailey,* 975 F.2d 1028, 1032 (4th Cir.1992).

Accordingly, we AFFIRM the order of restitution, but with a caveat that the district court may, upon remand, for other purposes set out hereinbefore, review and reconsider the restitution order with regard to setting a restitution amount that Morrison and/or Hernandez can feasibly be expected to make. Either the government or the defendant can return to the sentencing court and ask it to modify its restitution order based on changed or corrected circumstances. *United States v. Mahoney,* 859 F.2d 47, 51 (7th Cir.1988).

In summary, we AFFIRM in all respects, save the direction for the district court to reconsider

on REMAND the pertinent relevant conduct evidence, including reliable hearsay, which showed defendants Morrison and Hernandez to be directly involved in the thefts of automobiles as well as parts. The REMAND pertains only to the sentences (and possibly restitution) imposed on defendants Morrison and Hernandez.

EDMONDSON, Circuit Judge, concurring in part and dissenting in part:

I concur in the result and in the opinion of the Court, except I dissent from the Court's conclusion on sentencing discussed at III.A. of the Court's opinion: Given the nature of tencing, I cannot say that the district court the evidence before the district court at sencommitted clear error. I would affirm the convictions and sentences.