UNITED STATES of America,
Plaintiff,

v.

Paul MORRISON and Nelson
Hernandez, Defendants.

No. 93–345–CR.

United States District Court,
S.D. Florida.

Aug. 15, 2000.

Frank Tamen, Miami, FL, for plaintiff.

Harold Long, Jr., Miami, FL, Sheryl Joyce Lowenthal, Coral Gables, FL, for defendant.

## *CORRECTED ORDER ON REMAND*

FERGUSON, District Judge.

This case is before this Court on remand. Directions are given in the last paragraph of the Circuit Court opinion:

> In summary, we AFFIRM in all respects, save the direction for the district court to reconsider on REMAND the pertinent relevant conduct evidence, including reliable hearsay, which showed defendants Morrison and Hernandez to be directly involved in the thefts of automobiles as well as parts. The REMAND pertains only to the sentences (and possibly restitution) imposed on defendants Morrison and Hernandez.

*United States v. Exarhos,* 135 F.3d 723, 732 (11th Cir.1998).

In its brief on appeal the Government made the misleading argument that "[t]he district court labored under a mistaken view of the sentencing scheme when it concluded that it **could not** attribute the value of the stolen vehicles to Morrison

and Hernandez...." Brief for appellant at 41 (emphasis added). Nowhere in the record is there support for the contention. Obviously persuaded by the argument that this Court was not up to the task at hand a divided appellate court opined: "This phase of sentencing was, no doubt, most difficult for the district judge, particularly for one who lacked long experience in dealing with complex sentencing problems such as this case presented."[1]  *Exarhos,* 135 F.3d at 729. The question addressed by the court was "whether the district court acted under misapprehension as to its authority under the applicable law and guidelines when it limited the valuation figure from relevant conduct to the value of the stolen parts involved, plus one or possibly two stolen vehicles." *Id.*

Clearly, as reflected by the record, there was no issue whether this Court had the authority to enhance a sentence based on the value of stolen automobiles.[2] The precise questions, discussed at length during the May 26, 1994, sentencing hearing, were (1) whether the Court should attribute the value of the automobiles to the loss calculations for imposition of a lengthier sentence in light of the dearth of proof that the defendants stole the vehicles, and (2) whether the sentences could be enhanced in any case using a more serious non-charged substantive offense as relevant conduct.

Rejected here is the Government's disingenuous argument, made in a Memorandum On Resentencing, that the Court of Appeals found all the Government's hearsay evidence reliable as a matter of law and that the Court of Appeals "designated parts and vehicles the value of which must be included in sentencing." In accordance with the mandate this Court will reconsider the sentencing evidence for the purpose of enhancement after a re-analysis for reliability.

## The Indictment and Convictions

The three defendants, Morrison, Hernandez and Exharos, were charged in a five-count indictment with stolen auto parts offenses. Morrison was convicted on count I which charged a conspiracy to remove and/or alter VIN numbers, to possess stolen vehicles and parts, and to export stolen vehicles. He was also convicted on count V which charged possession of various parts of stolen vehicles parts with intent to sell. Morrison was acquitted on counts II, III, and IV which charged possession of specific Porsche vehicle parts with intent to sell. Hernandez was charged and convicted on only the conspiracy count. Exharos was acquitted on the conspiracy charged and convicted on counts II, III, and IV.

## The Sentencing Hearing

None of the defendants were charged with or convicted of auto theft. When asked by the Court why the Government chose not to charge the defendants with theft, for which it now seeks to have their sentences enhanced, the response was twofold:

> MR. TAMEN [Prosecutor]: Two responses. First of all, stealing the vehicle would not be a federal offense. So I cannot charge it, even if I wanted to.

> The second answer is, yes, the Court looks at the facts that were presented at trial and makes factual determinations as to what the defendants did. On that

---

1. There is no evidentiary basis for the suggestion. When this case came on for sentencing the undersigned had been a state trial court judge seven years, a state court of appeal judge for thirteen years, and was by then well-schooled in the federal sentencing guidelines to the extent they are different from state sentencing guidelines. Assuming that it may have any relevance the Court's total years of judicial experience is now twenty-seven (27) years, including almost seven years as a federal district court judge.

2. After hearing the evidence the Court terminated the presentation ruling that based "on what has been proffered here," an eleven (11) point increase in the offense level is not justified.

basis it decides what the relevant offense conduct was.

Returning to the point later in the hearing the Court inquired of the prosecutor the theory of enhancement for theft if it had no direct proof that the defendants actually stole automobiles:

> THE COURT: That is a jump (from stolen parts to theft) that gives me trouble. You cannot prove that an accused stole the vehicle. You prosecute for dealing in stolen parts. Then at the time of sentencing you can [seek] that gigantic enhancement based on the value of the car stolen; so you have sentenced him for stealing the entire vehicle, even though you can only prove that he trafficked in parts.

> MR. TAMEN: We know he knew the parts were stolen, and if he is buying only stolen parts, if he is not stealing them himself he is certainly under the definitions of relevant conduct [and] would be responsible for the thefts of cars somebody else is stealing in order to sell them the stolen parts.

Leaving the legal theory aside momentarily the Court turns to the evidence presented at the sentencing hearing. The Government called a single witness, Leslie Cravens ("Detective Cravens"), a detective with the Metro–Dade Police Department and lead investigator in the case. *His testimony was all hearsay.* Detective Cravens' accounts included (1) his personal recollection of the trial testimony, (2) conversations between other persons which were relayed to other officers and then to him, and (3) extra-judicial statements made to him, or other officers, by an admitted car thief, Jesus Pintado, who had a cooperation agreement with the Government. Detective Cravens' testimony was objected to throughout the hearing. Following are examples of the testimony he provided and the Court's concern with the quality of the testimony.

> PROSECUTOR: What did Mr. Canfield tell law enforcement officers, who interviewed him, about what he had learned regarding Paul Morrison, and who did he learn it from?

> MR. KLAUS: Objection. He did not tell him. He told other officers. Allegedly he told other officers this alleged Mr. Canfield; why don't they bring him in?

> THE COURT: Let me understand. Who is the source now? I am not sure. You tell me Mr. Tamen. How far removed from this defendant are these statements? How many persons removed?

> PROSECUTOR: We have Mr. Canfield having a conversation which involved the defendant. Mr. Canfield was interviewed by detectives who are part of the same unit as Detective Cravens, who documented what Mr. Canfield told him. Detective Cravens is testifying as to what those officers learned.

The exchange between the prosecutor and the detective on a stolen purple Porsche continues on page 39 of the hearing transcript:

> PROSECUTOR: Do you recall the question?

> WITNESS: No. I know it was in the course of that conversation where Mr. Canfield learned where the parts were coming from and who did the theft. I don't know exactly who was saying what.

Regarding six Porsche vehicles stolen from a dealership in Davie the Government relies on the following testimony of its single hearsay witness to prove that Morrison was the thief.

> PROSECUTOR: Moving on to the Palm Imports thefts, can you describe how you were able to connect Paul Morrison to the thefts of five Porsches from Palm Imports as listed in the PSI?

> WITNESS: One of the conversations I had with Jesus Pintado, he relayed a conversation to me that he had with Paul Morrison regarding Paul brag-

ging about stealing six Porsches from the dealership up there.

PROSECUTOR: When Mr. Pintado told what he learned from the defendant, were you able to corroborate the accuracy of that as far as the dealership victim making police reports of the thefts of that number of cars during the time period.

THE COURT: Did Pintado testify at trial about any of this?

PROSECUTOR: Yes, he did.

MR. KLAUS: No, he did not. The record speaks for itself. His recollection of what happened at trial is not really relevant. He did not testify as to these cars being stolen by Paul Morrison. We admit an engine from one of those cars was recovered. We figured that in the value. He is saying six Porsches were stolen. They have only five listed here.

WITNESS: One on the page before; Davie incident.

Counsel for the defendant continued his strenuous objections to the testimony.

MR. KLAUS: There was no evidence presented by Jesus Pintado at trial that Paul Morrison stole six Porsches from Palm Imports. We are not saying that they were not stolen, but there is no nexus that they were stolen by him. That is an awful jump. They are trying to prove here, trying to prove by innuendo and allegation and out of court statements; they had the opportunity to do that at trial.

This Court had no recollection of any trial testimony that Morrison or Hernandez stole the vehicles and the prosecutor offered no transcript of the pertinent trial testimony which would have assisted in resolving the dispute.

### Discussion on Law

At least two constitutional issues are presented: (1) Whether this Court may enhance a sentence for the commission of a separate offense which was not charged or proved with evidence which excluded every reasonable doubt, and (2) whether this Court may enhance a sentence based on an offense which is triable only in the state court.

Two decisions of the United States Supreme Court, in cases decided after this case was remanded, cast doubt on the Government's argument that a district court may consider evidence of offenses other than those charged for the purpose of enhancing a sentence. In *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Court ruled in a carjacking case that factors considered for the purpose of enhancing a sentence which are elements of an offense must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt.

In *Apprendi v. New Jersey*, —— U.S. ——, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), decided June 26, 2000, the *Jones* holding was expanded in a case based on a hate crime statute. The trial judge had found at a sentencing hearing, based on credible testimony of a police officer as to statements made by the defendant after his arrest, that racial bias motivated the shootings into the home of African–Americans. In reversing the sentence the Court held that the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt. *See id.* at 2356.

Although never raised as an issue at the sentencing hearing this Court has reservations whether a federal district court may base a sentence enhancement on evidence of the commission of a state offense over which it has no subject matter jurisdiction. It would seem to the Court that in addition to raising a due process question the action has the appearance of an end-run around the Tenth Amendment which reserves to the States powers which are not delegated to the United States by Consti-

tution. *See U.S. v. Lopez*, 514 U.S. 549, 561 n. 3, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (administration of criminal justice rests with states except as Congress has created offenses against the United States).

The constitutional questions notwithstanding this disposition turns on the evidence.

### Discussion of Evidence

■ A sentencing hearing is a mini-trial, *see United States v. Hunter*, 19 F.3d 895, 897 (4th Cir.1994), where the rules of evidence are relaxed. *See United States v. Lawrence*, 47 F.3d 1559, 1567 (11th Cir. 1995). Although hearsay evidence may be used in sentencing, the evidence must be reliable and the defendant must be afforded an opportunity to challenge it. *See United States v. Petty*, 982 F.2d 1365, 1370 (9th Cir.1993), *cert. denied*, 510 U.S. 1040, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994); U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 6A1.3. Reliability is the essential evidentiary requirement at sentencing, *see United States v. Figaro*, 935 F.2d 4, 8 (1st Cir.1991), which means in the ordinary sense having complete confidence in the veracity of another. *The American Heritage Dictionary* 1045 (2d coll. ed.1985). Where the probation officer and the prosecutor believe that the circumstances of the offense and the defendant's role in the offense merit a lengthier sentence, they must come to the sentencing hearing prepared to establish that determination with evidence adequate to satisfy the judicial skepticism aroused by the lengthier sentence that the proffered information would require the district court to impose. *Lawrence*, 47 F.3d at 1567.

At the outset it is again noted that the indictment did not charge any of the defendants with theft of the vehicles and the jury was not required to make such a finding in order to convict on any of the offenses. Neither does the Presentence Report ("PSR") allege that the defendants stole automobiles. In assessing an eleven (11) point enhancement for Morrison the probation officer wrote simply that "[t]he value of the stolen automobiles and other altered and/or stolen parts in this case is $854,000." The bulk of the loss is based on the value of seven (7) Porsche automobiles. It was at the sentencing hearing that the defendant Morrison was first accused of stealing the automobiles-a matter of proof necessary to the eleven (11) point enhancement. Detective Cravens came to the sentencing hearing obviously unprepared to testify that Morrison stole the vehicles as his recollection as to who said what was sketchy. A seven (7) point enhancement based on the value of the stolen parts was not contested.

A separate and unique question is raised by the addition of "legal and investigative costs" to the victim loss calculations for the purpose of enhancing the sentence. The ramifications are profound. There is no policy as to the nature of cases where the costs of investigating and prosecuting an offense will be factored into a sentence. And assuming that legal and investigative costs are permissible sentencing factors there is no standard as to what constitutes reasonable and necessary costs. This discussion, nevertheless, will address the definition of loss and the testimony provided in support of the loss factor.

U.S.S.G. § 2F1.1 provides the level of increase in the base offense based on victim loss for offenses involving fraud and deceit. Where the amount of the loss is more than $120,000 but less than $200,000, the Court must increase the base offense level by seven (7). It is undisputed that the value of stolen auto parts justified the seven level enhancement. The value of the seven stolen automobiles was $570,721. If it were proven that Morrison stole the vehicles the loss attributed to him would be $690,000 which calls for a ten (10) level increase. Adding $72,260 for legal and investigative costs would add another one (1) level increase.

Loss is defined in the U.S.S.G. § 2B1.1, commentary n. 2, as "the value of the

property taken, damaged or destroyed." Under the same note it is further explained that "[i]n stolen property offenses (receiving, transporting, transmitting, or possessing stolen property) the loss is the value of the stolen property determined as in a theft case." Neither the guidelines or 18 U.S.C. § 3571 from which it derives, *see* U.S.S.G. § 8A1.2, commentary n.(i), authorizes a sentence enhancement based on the cost of investigating and prosecuting offenses and the Government has cited no authority for the proposition that this Court may consider normal Government costs as a sentencing factor.

■ Little need be said about the testimony regarding legal and investigative costs; there was none. Any factor the Government relies upon as a factor for enhancing a sentence must be supported by evidence. The PSR, which ordinarily relies exclusively on information furnished by the prosecutor and police investigators in its description of the offense conduct, has no evidentiary weight where its factual conclusions are challenged. Neither does the PSR findings shift the burden of proof from the Government to the defendant as to any "sentencing factor" relied on for an enhancement.[3] On this factor the prosecutor was overreaching.

Both the case law and the guidelines stress that hearsay testimony must be reliable and that the defendant must be given an opportunity to rebut the testimony. In *Lawrence* the court held that "[i]t is the district court's duty to ensure that the Government carries [its] burden by presenting reliable and specific evidence." 47 F.3d at 1566. Making a reliability assessment when the evidence is solely hearsay requires the Court to go behind the statements of the testifying witness to consider his sources. In this case the hearsay

sources providing information that the defendant Morrison stole the vehicles are a "partner in crimes" who had a cooperation agreement with the Government in exchange for money or a favorable disposition in his own case, along with persons who allegedly made statements naming Morrison as the thief to other persons who then gave the information to the testifying witness. There is an unresolved dispute whether Pintado gave testimony at trial accusing Morrison of stealing automobiles and no evidence was provided by the Government to support a finding in its favor.

### Conclusion

■ Testimony given by Detective Cravens attributing the possession and sale of stolen *automobile parts* to the defendants had a sufficient indicia of reliability. The same cannot be said as to the uncorroborated hearsay statements tending to prove that Morrison stole six (6) Porsche automobiles from a Davie dealer. Even by the low "preponderance of the evidence" standard, 47 F.3d at 1566, which the Sentencing Guidelines Commission believes is appropriate, the proof is lacking.

Having fully reconsidered the hearsay evidence offered by the Government in support of an eleven (11) point enhancement, as instructed by the Court of Appeals, it is found that (1) the reliable evidence will support only a seven (7) point enhancement, (2) the evidence offered to prove that a defendant stole (7) automobiles is unreliable, and (3) there is no evidence to support a victim loss calculation of $72,260 for legal and investigative costs.

No additional argument or evidence was presented by the defendants in support of their objections to the restitution judgment from which it is inferred that they

---

**3.** In *Apprendi* the court wrote that it had previously dismissed the possibility that a State could circumvent due process requirements merely by "redefin[ing] the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment." —— U.S. at ——, 120 S.Ct. at 2360 (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 698, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)). As stated earlier in this order the constitutional issues raised by this Court in 1994, which were not addressed to the Court of Appeals, are not reached here.

will make their appeal to the probation officer or to the Court at a later date if circumstances show that there is indeed an inability to pay the total amount.

The judgments and sentences entered on May 31, 1994, are ratified.