[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-13246
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 5, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00107-CR-ORL-28-GJK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NESTOR QUINONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 5, 2010)

Before CARNES, BARKETT  and MARCUS, Circuit Judges.

PER CURIAM:

Nestor Quinones appeals his conviction and sentence for conspiracy to

possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. On appeal, Quinones argues that the district court: (a) erred when it failed to inquire into the factual basis of his *pro se* motion to substitute counsel; (b) clearly erred when it found that he was accountable for at least 15 kilograms of cocaine; (c) plainly erred by ordering him to pay Ruth Fricke restitution; and (d) erred by issuing him a U.S.S.G. § 3B1.1(b) enhancement for being a manager or supervisor in criminal activity that had five or more participants. We address each of these contentions in turn.

## I. Motion to Substitute

An indigent criminal defendant has a right to be represented by counsel, but "he does not have a right to be represented by a particular lawyer, or to demand a different appointed lawyer except for good cause." *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973). "Unless a Sixth Amendment violation is shown, whether to appoint a different lawyer for an indigent criminal defendant who expresses dissatisfaction with his court-appointed counsel is a matter committed to the sound discretion of the district court." *Id.* In order to warrant a substitution of counsel, "the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.* A district court's failure to inquire into the

2

factual basis of a defendant's dissatisfaction "normally" constitutes "reversible error." *Id.*

In *Young*, we held that reversal was not required after considering the record as a whole. *Id.* at 995-96. The defendant in that case moved for substitution of counsel because he alleged that his attorney was disclosing confidential matters to the prosecution. *Id.* at 995. The district court rejected that argument based on its professional acquaintance with the defense attorney. *Id.* We held that reversal was not required because the defense attorney had represented the defendant during his first trial, a successful direct appeal, and second trial. *Id.* at 994, 996. We noted that the defendant only expressed dissatisfaction with his attorney during the second trial. *Id.* at 994. Additionally, the second trial was "a virtual duplicate of the first" because the defense strategy was the same for both. *Id.* at 996. We rejected the defendant's argument that his distrust of his attorney made effective representation impossible because the record did not demonstrate an irreconcilable conflict between he and his attorney or any breakdown of communication between them. *Id.* at 996. We ultimately concluded that the district court did not abuse its discretion in refusing to appoint the defendant a new attorney. *Id.*

In this case, although the district court failed to inquire into Quinones's motion to substitute counsel based on allegations that his attorney had failed to

bring an interpreter to several of their meetings prior to sentencing, the record as a whole demonstrates no reversible error. The record demonstrates that Quinones's former attorney made several objections to the presentence investigation report ("PSI") and argued those objections at sentencing. During sentencing, that attorney succeeded in reducing Quinones's base offense level. Additionally, Quinones did not voice any dissatisfaction with his attorney when the district court gave him an opportunity to address the court at sentencing. Moreover, with the exception of the restitution claim, Quinones with new counsel, now appeals the same issues raised by former counsel. Accordingly, we find no reversible error.

## II. Drug Quantity

We review a district court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes for clear error. *United States v. Simpson*, 228 F.3d 1294, 1298 (11th Cir. 2000). When a defendant objects to his base offense level, the government must establish the quantity of drugs by a preponderance of the evidence. *United States v. Butler*, 41 F.3d 1435, 1444 (11th Cir. 1995). Sentencing may be based on "fair, accurate, and conservative estimates of drugs attributable to a defendant," but cannot be based on calculations that are "merely speculative." *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998). When a district court's decision on drug quantity attribution is based on

4

testimony of witnesses who appear before it, great deference is given to the court's assessment of the credibility and evidentiary content of that testimony. *United States v. Lee*, 68 F.3d 1267, 1276 (11th Cir. 1995).

In this case, the government established by a preponderance of the evidence that Quinones was accountable for at least 15 kilograms of cocaine. Agent Karl Weiss of the Drug Enforcement Administration testified that, during Quinones's participation in the conspiracy, he received approximately nine to ten deliveries containing an average of two to three kilograms of cocaine each. Based on a fair and conservative estimate of nine deliveries at two kilograms each, Quinones was responsible for at least 18 kilograms of cocaine.

### III. Restitution

Objections or arguments that are not raised before the district court are reviewed for plain error. *United States v. Evans*, 478 F.3d 1332, 1338 (11th Cir. 2007). To establish plain error, a defendant must show: (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Id.*

Pursuant to U.S.S.G. § 5E1.1, when there is an identifiable victim, the district court shall enter a restitution order for the full amount of the victim's loss, if authorized by 18 U.S.C. § 3663. U.S.S.G. § 5E1.1(a)(1). Under 18 U.S.C.

§ 3663, the Victim and Witness Protection Act, the district court may order a defendant convicted under 21 U.S.C. § 841 to make restitution to any victim of such offense. 18 U.S.C. § 3663(a)(1)(A). The term "victim" means a "person directly and proximately harmed as a result of the commission of an offense . . . including, in the case of an offense that involves as an element a . . . conspiracy, . . . any person directly harmed by the defendant's criminal conduct in the course of the . . . conspiracy." *Id.* at § 3663(2). Directly and proximately means that "a particular loss would not have occurred but for the conduct underlying the offense of conviction" and the "causal connection between the conduct and the loss is not too attenuated (either factually or temporally)." *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007).

In determining whether to order restitution under § 3663, the district court shall consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i)(II). Although the district court is required to evaluate the defendant's financial condition and ability to pay before determining a restitution amount, the district court is not required to make factual findings whenever it imposes a restitution order "if the appellate record provides sufficient reasons for the decision to order

6

full restitution." *United States v. Remillong*, 55 F.3d 572, 574, 576 (11th Cir. 1995).

In *United States v. Exarhos*, 135 F.3d 723, 731 (11th Cir. 1998), we held that there was no error with respect to a district court's restitution order for a defendant who failed to object below to the restitution order. *Id.* In that case, the PSI had indicated that the defendant might not be able to pay a fine. *Id.* The district court did not impose a fine but did order restitution in the amount of $120,000 to be joint and severally liable with his codefendant. *Id.* There, the codefendant preserved his objection to the restitution order, but we held that the district court had considered the financial needs of the defendant when the appellate record demonstrated that the district court had information about the extensive loss of the victims, the codefendant's limited resources and inability to pay, and the codefendant's past employment. *Id.* We stated that "while the district court might well have made more detailed findings to assist us in our task, the court did at least 'consider' the necessary factors." *Id.* at 732. We reiterated that a sentencing court was "not prohibited from imposing restitution even on a defendant who [was] indigent at the time of sentencing so long as the record indicate[d] that the court considered the defendant's future ability to pay." *Id.*

In this case, the district court did not plainly err by finding that Ruth Fricke

was a victim because, had it not been for the underlying cocaine conspiracy, she would not have paid $20,000 to Quinones. Additionally, based on the appellate record, the district court did consider Quinones's financial ability to pay restitution because the court possessed detailed information about his financial status and inability to pay a fine, acknowledged Quinones's limited financial status, considered Quinones's future ability to pay restitution based on his Bureau of Prisons employment, and stated that it would adjust the payment terms upon information that there was a material change in Quinones's ability to pay. Accordingly, there was no error.

## IV. Role Enhancement

We review a district court's application of the guidelines to the facts *de novo* and all factual findings for clear error. *United States v. Kinard*, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006).

Under U.S.S.G. § 3B1.1, a defendant receives a three-level increase in his offense level if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). A "participant" is a "person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id*. at § 3B1.1(b), comment. (n.1). The defendant must have been a

manager or supervisor of "one or more other participants." *Id.* at § 3B1.1(b), comment. (n.2). To distinguish between a leadership and organization role from one of "mere management or supervision," the court should consider the following factors: (a) the exercise of decision making authority, (b) the nature of participation in the commission of the offense, (c) the recruitment of accomplices, (d) the claimed right to a larger share of the fruits of the crime, (e) the degree of participation in planning or organizing the offense, (f) the nature and scope of the illegal activity, and (g) the degree of control and authority exercised over others. *Id.* at § 3B1.1(b), comment. (n.4).

In *United States v. Perry*, 340 F.3d 1216, 1217-18 (11th Cir. 2003), we held that an aggravating role enhancement was appropriate where the defendant actively recruited two individuals to transport drugs, arranged the recruited individuals to transport drugs, paid at least one of those individuals for transporting cocaine, and, was in turn, paid for recruiting and supervising individuals in the drug conspiracy. *Id.*

In this case, the district court did not err by finding that Quinones was a manager or supervisor over two juveniles in the conspiracy. There were at least five participants in Quinones's portion of the conspiracy, Quinones admitted to recruiting the juveniles to use their addresses, Agent Weiss testified that Quinones

9

had directed one of the juveniles to sign for packages, accept them, and deliver them to him, and Quinones paid the juveniles for their roles in the conspiracy. Accordingly, we affirm.

**AFFIRMED.**